**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-03405-DLB |

**MEMORANDUM OF LAW**

**IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER**

## INTRODUCTION

This is the third lawsuit, in the third judicial district, asking a federal court to answer the same questions about the same document:

- On June 18, 2026, the National Family Planning & Reproductive Health Association, the national membership association of Title X grantees, and a Pennsylvania Title X grantee filed a facial challenge to the fiscal year 2027 Title X Notice of Funding Opportunity (the "2027 NOFO") in the Middle District of Pennsylvania. *National Family Planning & Reproductive Health Ass'n v. Kennedy*, No. 1:26-cv-01684-JPW (M.D. Pa.) ("*NFPRHA*"). Merits briefing will completed on September 8, 2026, and oral argument is set for September 11, 2026.[1] *NFPRHA*, ECF No. 44 (scheduling order).[2] The operative complaint from *NFPRHA* is attached hereto as Exhibit 1.
- On July 28, 2026, Planned Parenthood Federation of America filed a second facial challenge to the same NOFO in the District of Columbia. *Planned Parenthood Federation of America, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 1:26-cv-02656 (D.D.C.)

---

[1] Citation to the docket in the cases filed in other disticts will be prefaced with the abbreviated case name (e.g., "*NFPRHA*, ECF No. ___."). Citations to ECF Nos. without a case abbreviation shall refer to the docket in this action.

[2] On September 1, 2026, the Court in *NFPRHA* Action ordered supplemental briefing on the application of *Reno v. Catholic Soc. Servs.*, 509 U.S. 43 (1993) to the defendants' ripeness arguments. *See NFPRHA*, ECF No. 62. The supplemental briefing is to be completed by September 8, 2026. *Id.*

("*PPFA*"). Merits briefing begins on September 14. *PPFA*, Aug. 25, 2026, Minute Order. The operative complaint from *PPFA* is attached hereto as Exhibit 2.

- On August 27, 2026, twenty-one States and two Governors filed this action—a complaint that tracks the *PPFA* complaint claim for claim and challenged provision for challenged provision—in a third forum. ECF No. 1.

The three cases present identical, purely legal questions: whether conditions embedded in the 2027 NOFO (the "Agency Priorities") are facially invalid under the Administrative Procedure Act. All three challenges are facial. None turns on the circumstances of any applicant, grantee, or State, and the operative document is an exhibit to each complaint. Every question in this case should be answered once; certainly not more than twice. Importantly, the two earlier-filed cases are positioned for a decision on the merits before any applications are due or any award issues under the NOFO. This one, currently, is not.

The Supreme Court described a similar configuration long ago: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Here, there are three cases involving the same issues, and the third was filed after briefing on shared questions nearly finished in the first forum.

That sequence speaks to the nature of this filing. Plaintiffs could have presented their claims by intervention in *NFPRHA* (a nearly fully briefed case in a district where one of the Plaintiffs, the Governor of Pennsylvania, resides) or by intervention or filing in the District of Columbia (where every Defendant resides). They instead initiated a third action in a third district, securing a third draw of a district judge on a question two other judges now hold. The claim spreading tactic has no stopping point. What's next? Plaintiff coalitions dividing and conquering, filing in dozens of judicial districts, needing to score only one shot on goal while the government

must save each one? The answer, Defendants submit, is § 1404(a)'s instruction that transfer serve "the interest of justice."

Defendants therefore ask the Court to transfer this action to the Middle District of Pennsylvania or alternatively, to the District of Columbia, "in the interest of justice." The principle Defendants advance here is narrow. Related cases do not always call for transfer. But three facial challenges to the same document involving the same claims and overlapping parties warrants it. The two earlier cases, filed by two different plaintiff groups before the duplication ripened, will remain pending in two districts. This Court decides whether there are three.

## BACKGROUND

On July 9, 2026, the Office of Population Affairs ("OPA"), a component of the Office of the Assistant Secretary for Health within the Department of Health and Human Services, issued the operative Notice of Funding Opportunity governing the 2027–2032 Title X grant cycle. ECF No. 1, Compl. ¶ 3 & Ex. A. The NOFO was formulated and issued at the Department's headquarters in Washington, D.C., where every Defendant maintains its offices. ECF No. 1 at 3–4. It applies by its terms to every Title X applicant and grantee in the country, on identical terms in all fifty States. No application has been granted or denied under it. The complaint challenges six sets of "Agency Priorities" it labels the "Challenged Conditions," ECF No. 1 ¶ 3, and its challenge is to the face of the document—not to any award decision.

***NFPRHA* (first).** The *NFPRHA* case, before Judge Jennifer P. Wilson, proceeded immediately to dispositive motions after plaintiffs filed the complaint: the plaintiffs moved for summary judgment on July 2; Defendants moved to dismiss on July 31 and cross-moved for summary judgment on August 6; the plaintiffs responded on August 20; and the court will hear

argument on September 11, 2026 in Harrisburg, the seat of government of one of the Plaintiffs here. *NFPRHA*, ECF No. 44 (scheduling order).

***PPFA* (second).** The *PPFA* complaint seeks an order under 5 U.S.C. § 706 setting aside the same priority conditions, injunctive relief against their implementation "across all application and funding stages," and postponement of the NOFO's effective date under 5 U.S.C. § 705. *PPFA*, ECF No. 1. The case is assigned to Judge Christopher R. Cooper, who on August 19, 2026—eight days before this case was filed—decided a similar challenge to HHS grant-funding priorities, *Hennepin Cnty. v. U.S. Dep't of Health & Human Servs.*, No. 26-cv-2460 (CRC), 2026 WL 2426300 (D.D.C. Aug. 19, 2026). In *PPFA*, opening briefs are due September 14, 2026, and merits briefing will conclude on October 23, 2026. *See PPFA*, Aug. 25, 2026 Minute Order.

**This case (third).** Two days after Judge Cooper set merits briefing in *PPFA*, Plaintiffs filed this action. Their complaint challenges the same six sets of conditions under the same theories, and asks this Court to declare them unlawful, to "vacate the incorporation" of each in the 2027 NOFO under § 706, and to enjoin Defendants from applying them "to or upon **any applicant or grantee**," party or non-party alike. ECF No. 1, Prayer ¶¶ i–iii (emphasis added). Its Maryland-specific allegations, ECF No. 1 ¶¶ 78–83, describe effects on the Maryland Department of Health's grant that are identical in kind to those pleaded for grantees in the other plaintiff States.

## LEGAL STANDARD

Section 1404(a) permits transfer, "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where the action "might have been brought." Courts in this Circuit consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers &*

*Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *accord D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

The interest of justice is a distinct consideration "intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties," *D2L*, 671 F. Supp. 2d at 783, and it "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986); *see also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 637 (E.D. Va. 2006) (finding interest of justice in many cases may dictate the outcome of a motion to transfer irrespective of the other factors). Transfer requires a "lesser showing of inconvenience" than common-law dismissal did. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

"The decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008) (citing *Brock v. Entre Comput. Ctrs., Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991)).

## ARGUMENT

### I. This Action Could Have Been Brought in Either Transferee District.

Venue in an action against federal agencies and officers lies where "the plaintiff resides," 28 U.S.C. § 1391(e)(1)(C): the Governor of Pennsylvania, who sues in his official capacity on behalf of the Commonwealth, resides in Harrisburg, in the Middle District of Pennsylvania. ECF No. 1 at 3. Venue equally lies where "a defendant in the action resides" and where "a substantial part of the events or omissions giving rise to the claim occurred," *id.* § 1391(e)(1)(A)–(B): each of the federal agency Defendants resides in the District of Columbia, where the NOFO was formulated and issued. ECF No. 1 at 3–4. The threshold is satisfied for both forums; the only question is whether the § 1404(a) considerations favor transfer. They do, decisively.

## II. The Interest of Justice Decisively Favors Transfer.

### A. Three courts are being asked to decide one question.

*Continental Grain* transferred a case so that a single controversy, pending in two districts, could be decided in one, because duplicative adjudication of "precisely the same issues" is "the wastefulness of time, energy and money that § 1404(a) was designed to prevent." 364 U.S. at 26. *Continental Grain* was an admiralty case, but nothing exempts APA litigation from its holding. Nor does the case's reasoning require identical parties; it looks to issues. *Id.*

The duplication here is total: Three facial challenges to one document arguing the same theories. Claim for claim, the Complaint corresponds to the *PPFA* complaint. And nearly all the work has already been done once: *NFPRHA* is nearly fully briefed and seven days from argument. Requiring the same question to be briefed a third time here—while the first court's decision may issue within weeks and while the second court's briefing is about to occur—serves no interest the venue statutes recognize.

This District's law says so. "The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum," both to "facilitate efficient pretrial proceedings" and "because it avoids inconsistent results"—and transfer is favored "even if it is uncertain whether the transferred case will be consolidated with the related pending case." *D2L*, 671 F. Supp. 2d at 783. The interest of justice also "strongly favors transfer when a party has previously litigated a case involving similar issues and facts before the transferee court," because "[t]he transferee court's familiarity with the facts of the case and the applicable law promotes judicial economy." *Id.* at 784. Both propositions apply here. A related action is pending in each proposed transferee forum, and each transferee court is already invested in the subject: Judge Wilson, through a complete round of dispositive briefing in *NFPRHA*; and Judge Cooper, through his recent *Hennepin County* decision, on which the plaintiffs in *NFPRHA* themselves rely. *See also*

*Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 27 (D.D.C. 2002) ("The Court is also persuaded that transfer is appropriate by virtue of the fact that a possibly related case is already before the District Court for Kansas."). Upon transfer to either district, Defendants consent to expedited briefing of Plaintiffs' claims in the transferee court on any reasonable schedule Plaintiffs propose.

The schedule is important, too. Applications under the 2027 NOFO come due January 11, 2027, and the Department intends to issue awards by April 1, 2027. ECF No. 1 ¶ 67; Ex. A at 5 (anticipated award date listed in NOFO). Both earlier-filed cases are positioned to produce a decision on the merits before the application deadline. Because of Plaintiffs' own delay, this case is behind, and a third adjudication that cannot conclude well before the application deadline serves no remedial purpose the first two do not already serve sooner. Because the other courts are familiar with the issues and the Defendants are already preparing or have already prepared briefs in the other cases, the fastest route to a merits decision for these Plaintiffs—on their own claims—is a transferee forum, not a third round of expedited briefing in a different court.

**B. Section 1404(a) exists to police claim spreading.**

Because each complaint seeks relief operating against the government as to everyone—vacatur, and here an injunction expressly extending to "any applicant or grantee," ECF No. 1, Prayer ¶ iii—the challengers collectively need to prevail once, anywhere, while the government must prevail everywhere. A favorable ruling in any district resolves the question nationally, but an unfavorable one resolves nothing, because the same claim is pending elsewhere. Each successive filing in a new district therefore accomplishes exactly one thing the earlier cases could not: another shot on goal with a different judge.

The filing's untimeliness makes the inference unavoidable. If pre-award adjudication were the object, the time to sue was no later than July, when the operative NOFO issued and the first

challenge was already pending.[3] Or Plaintiffs could intervene in one or the other pending cases. Plaintiffs instead waited seven weeks, until briefing on the shared question was nearly complete elsewhere and their own case could no longer realistically be decided within the grant cycle. A suit filed too late to serve its own stated purpose is explicable as a hedge against an adverse ruling in the earlier forums, and little else. The Supreme Court flagged the incentive in *Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025) (universal relief "incentivize[s] forum shopping, since a successful challenge in one jurisdiction entails relief nationwide"), and the interest-of-justice clause is the venue system's precise answer: § 1404(a) "should not create or multiply opportunities for forum shopping," *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). This Circuit has held since 1956 that it has "no sympathy with shopping around for forums," *Clayton v. Warlick*, 232 F.2d 699, 706 (4th Cir. 1956). Just so here.

Declining to transfer would ratify this practice: bands of related plaintiffs or associations and states with overlapping memberships dividing a single controversy and conquering it forum by forum. Twenty-three state sovereigns or governors filed this complaint together. With no limiting principle, nothing prevents the same coalition from filing a dozen complaints in a dozen districts, each anchored by a different resident plaintiff, each drawing a different judge, each seeking universal relief—multiplying district courts' caseloads and seeding manufactured conflicts, with the first court to rule against the government, rather than the appellate hierarchy, settling national policy. That risk is concrete here. The three districts sit in three different circuits — the Third, the Fourth, and the District of Columbia — so a third adjudication threatens not only inconsistent district-court judgments about one document, but conflicting decisions about it.

[3] The Original FY2027 Title X NOFO was posted on April 3, 2026. *See NFPRHA*, ECF No. 45-2 (administrative record which includes original NOFO). This further undermines any justification for Plaintiffs' delay in bringing this action.

Importantly, Defendants ask for transfer to either of two districts—the first before a judge appointed by President Trump, the second before a judge appointed by President Obama who just ruled against HHS in significant part in *Hennepin County* eight days before this case was filed. Defendants do not seek a particular judge. They seek fewer than three cases pending of this character. The federal "courts of one District or Circuit must be presumed to be as able and as well qualified to handle litigation as those in another," *Clayton*, 232 F.2d at 706 (citation omitted), and one of two earlier forums should decide this controversy.

**C. The three cases are one case.**

Defendants do not contend that three related cases always warrant transfer. Parallel actions can of course differ in ways that matter: different plaintiffs plead different facts, press different claims, and seek judgments that bind only themselves. Where those differences exist, a second forum may have something to adjudicate that the first does not.

This is not that case. A facial challenge is adjudicated on the face of the document: no plaintiff's circumstances can alter the question presented, and no complaint in the three cases pleads a fact that bears on it. Each complaint seeks universal relief, which here, is vacatur of the conditions and an injunction running to "any applicant or grantee." ECF No. 1, Prayer ¶¶ ii–iii. So, the remedy any plaintiff obtains anywhere is the identical remedy every plaintiff seeks everywhere. To be sure, sovereign plaintiffs may hold interests that private plaintiffs do not. But in a facial challenge, those interests do not matter. Nor does transfer put any Plaintiff's remedy at risk. This is a motion to transfer, not to dismiss: Plaintiffs remain parties to their own action in the transferee court and retain their own judgment, whatever the ultimate scope of relief.

This case also presents a setup where venue selection carries maximum systemic consequence and minimum private cost. Systemic consequence: the chosen forum sets the terms of a national program for everyone, and challengers collectively need prevail only once. *See CASA*,

606 U.S. at 847 n.10, 855. Private cost: no Plaintiff loses anything when the one case is litigated in a forum where it already stands ready for decision. Section 1404(a) asks not whether venue is proper but whether *this* forum, among the proper ones, is where a controversy should be adjudicated in the interests of justice. With two more appropriate forums already engaged in the case, the answer in the third forum is decisively no.

## III. Plaintiffs' Choice of Forum is Entitled to No Weight Here.

Defendants acknowledge the ordinary rule: "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). But that weight is not fixed, and here three independent considerations reduce it to nothing.

*First, no connection.* The choice is "afforded less weight" where "the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation." *Thomas v. Nexion Health, Inc.*, No. CV RDB-15-2382, 2016 WL 3057987, at *4 (D. Md. May 31, 2016) (quoting *Tse v. Apple Computer*, No. 05–2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006)); *see Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002); *D2L*, 671 F. Supp. 2d at 778–79. This forum has little connection to the events giving rise to the case. The challenged document was formulated and issued in Washington, D.C. *See Nat'l Ass'n of Home Builders v. U.S. E.P.A.*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (APA claims arise where decision-making process occurred). The complaint's venue allegation rests on Maryland's residence and on in-district effects of a nationwide instrument, ECF No. 1 ¶ 13—effects pleaded and practically felt in materially identical terms for every plaintiff State. A nationwide instrument's effects are felt in every district to the same degree; if that sufficed, the presumption would be equally strong in all ninety-four.

Two specific features make the point concrete. *The effects are not yet felt anywhere.* No one has applied under the 2027 NOFO; no application has been scored, granted, or denied; and no award has been altered. The consequences the complaint describes are anticipated consequences of a competition yet to occur, and a forum cannot claim a distinctive connection to hypothetical injuries. *Also, uniform nationwide application is the opposite of a local interest.* Sitting en banc, the Fifth Circuit rejected a local-interest finding premised on the presence of a nationally distributed product in the forum, because that reasoning "could apply virtually to any judicial district or division in the United States." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 318 (5th Cir. 2008). A NOFO applying on identical terms in all fifty States has the same posture: its reach establishes a connection to every district, which is to say a distinctive connection to none.

*Second, the home-forum rationale reaches at most one plaintiff of twenty-three.* The deference owed to a plaintiff's forum choice rests on a specific premise: that a litigant should not lightly be displaced from the forum in which it resides. For only one plaintiff is that satisfied. The other twenty-two are strangers to this District. Venue was accordingly proper under § 1391(e)(1)(C) in the home districts of twenty-one States, and the coalition selected among them. Assessed as to the group that made it, the home-forum interest diffuses to almost nothing.

The corollary matters too: transfer displaces no one. Twenty-two of the twenty-three Plaintiffs are choosing to litigating away from home and will remain so in any forum. And the forums they passed over are hardly remote. The Middle District of Pennsylvania adjoins this District and sits in Harrisburg—the official seat of a Plaintiff, the Governor of Pennsylvania, and the forum where the first-filed case will be argued on September 11. The District of Columbia also adjoins this District, and it is where every Defendant resides, where the challenged decision making process occurred, and where the administrative record sits. Plaintiffs did not choose this

District over distant or burdensome alternatives. They chose the one District that sits in-between the two other Districts in which the related cases are pending, one being in a co-plaintiff's capital.

*Third, forum shopping.* Deference to a plaintiff's chosen forum is "negated by impermissible forum shopping." *Omega Demolition Corp. v. Hays Group, Inc.*, 306 F.R.D. 225, 233 n.4 (D. Minn. 2015) (citing *Clayton*, 232 F.2d at 706); *see Carolina Casualty Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) ("If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference."); *Polaroid Corp. v. Casselman*, 213 F. Supp. 379, 383 (S.D.N.Y. 1962) (choice "entitled to no weight whatever where it appears that the plaintiff was forum shopping"). The indicia here of forum shopping are strong: a third district, a third circuit, a third judge, a complaint that copies the second-filed case and waited out briefing in the first case. The tale of this tape shows litigation strategy, not legitimate venue interests. Plaintiffs' selection of forum is thus entitled to no weight against the systemic considerations above.

The pattern is visible at a glance. Three challenges to one document, filed in sequence over ten weeks, in three districts that span three circuits and roughly one hundred twenty miles of the same corridor—the third of them filed in the exact middle, forty miles from the second, on behalf of a universe of applicants and grantees for whom the first two associations already litigate.

* * *




(1) **M.D. Pa.** · Third Circuit
*NFPRHA v. Kennedy* No. 1:26-cv-01684
**Filed June 18, 2026**
Fully briefed. Argument September 11, 2026.
Home forum of a Plaintiff: the Governor of Pennsylvania, who sues in his official capacity.

(3) **D. Md.** · Fourth Circuit
*New York v. HHS* No. 1:26-cv-03405
**Filed August 27, 2026**
No responsive pleading. Briefing not begun.
THIS CASE. A third district, a third circuit, a third judge.

(2) **D.D.C.** · D.C. Circuit
*PPFA v. HHS* No. 1:26-cv-02656
**Filed July 28, 2026**
Briefing closes mid-October 2026.
Every Defendant resides here. The NOFO issued here; the record is here.

**ALREADY BEFORE A COURT** — NFPRHA (Harrisburg) sues in a representative capacity for members that include 56 of the 77 current Title X grantees, operating 63 of the 84 grants: state, county, and local health departments; Planned Parenthood affiliates; and FQHCs. PPFA (Washington) sues on behalf of 46 affiliated organizations, 32 of which participate in Title X.

## IV. The Remaining Factors Are Neutral, and This Motion Should Be Decided First.

This is a facial, record-review case: the challenged document is Exhibit A to the complaint, review will proceed on the *same* administrative record compiled in Washington that transmits electronically, and there will be no witnesses and no discovery on facial validity. Witness and party convenience are therefore neutral among the three districts. *See W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 360 (D.D.C. 2017) (convenience factors carry little weight in APA cases).

Transfer is a non-merits threshold question, *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 432–33 (2007), and courts treat its prompt resolution as an entitlement: "disposition of that [transfer] motion should have taken a top priority in the handling of this case," *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003); *accord* In re Apple Inc., 52 F.4th 1360, 1362 (Fed. Cir. 2022) ("precedent entitles parties to have their venue motions prioritized"); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 900–01 (Fed. Cir. 2021) (transfer decided "before resolving the substantive issues").

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court transfer this action to the United States District Court for the Middle District of Pennsylvania or, in the alternative, to the United States District Court for the District of Columbia; that it resolve this motion before any other matter in the case; and that it set the motion for a hearing pursuant to Local Rule 105.6.

Respectfully submitted,

September 4, 2026

/s/ *Landen P. Benson*
LANDEN P. BENSON
Attorney
GA Bar No. 863909
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, DC 20201
landen.benson@hhs.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, the foregoing Memorandum of Law in Support of Defendants' Motion to Transfer was filed through the CM/ECF system, which will automatically generate notice upon all counsel of record.

/s/ *Landen P. Benson*

LANDEN P. BENSON
Attorney
GA Bar No. 863909
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, DC 20201
landen.benson@hhs.gov

*Counsel for Defendants*