**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br>Defendants. | Civil Action No. 1:26-cv-03405-DLB |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**

Two developments since Defendants moved confirm the Motion's premise. On September 17, the Middle District of Pennsylvania dismissed the first-filed challenge to this NOFO for want of a ripe Article III case or controversy. *NFPRHA v. Kennedy*, No. 1:26-cv-01684, ECF No. 73, slip op. (M.D. Pa. Sept. 17, 2026) (Ex. 1) ("*NFPRHA*"). And Plaintiffs have confirmed that this case will be decided on the same administrative record compiled and produced in that case and *Planned Parenthood Federation of America, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 1:26-cv-02656 (D.D.C.) ("*PPFA*"), Opp'n at 11, 15–16, and have asked to proceed to merits briefing on that record while this motion is under advisement, *id.* at 20; Ex. 2 (Sept. 17, 2026 email between counsel).

One controversy, one record, and a threshold jurisdictional question that one federal court has answered. Plaintiffs see that as a reason to accelerate merits briefing in a third forum. Not so. It is reason to decide first whether this Court should be the third court to handle the same legal challenge.

## I. Convenience Does Not Favor Maryland, and the Interest of Justice Controls.

Where, as here, the convenience factors are neutral and Plaintiffs' claimed home-forum interest is weak, the motion turns on the interest of justice. That is an independent component of the § 1404(a) analysis in this Circuit, alongside the weight accorded a plaintiff's forum choice and the convenience of parties and witnesses. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

Plaintiffs argue that this case best suited for this court because Maryland has "a substantial connection to this district." Opp'n at 1. This is a facial challenge whose merits will be resolved on an administrative record, without witnesses, or Maryland-specific trial facts. This case does not concern grants or conduct specific to Maryland.[1] Plaintiffs concede the action could have been brought in the District of Columbia. Opp'n at 5 n.2. Only one of the twenty-three Plaintiffs is located in Maryland. The other twenty-two—twenty States and the Governors of Pennsylvania and Kentucky—are litigating outside their home fora. The principal question is whether the interest in avoiding duplicative adjudication of one controversy outweighs the forum choice that is home to only one of twenty-three Plaintiffs.

Plaintiffs contend that because Defendants have not shown Maryland to be *inconvenient*, the convenience factors weigh against transfer rather than being neutral. Opp'n at 11–12. That misreads the framework. The interest of justice is a factor independent of convenience. *Trs. of the Plumbers & Pipefitters*, 791 F.3d at 444. And where, as here, an APA record case presents no

[1] The Title X program has many participants and grantees, and many Plaintiff states have the same or greater financial interest in the administration of the Title X program. *See* U.S. Dep't of Health & Human Servs., Off. of Population Affs., *Fiscal Year 2024 Title X Service Grant Awards*, https://opa.hhs.gov/grant-programs/title-x-service-grants/current-title-x-service-grant-recipients/fy2024-title-X-service-grant-awards (last visited Sept. 20, 2026).

witness, discovery, or record-access burdens that distinguish one district from another, the interest of justice is not a tiebreaker but the heart of the inquiry.

On that question, it is useful to return to first principles.

## II. Fragmenting One Controversy Among Multiple Courts Disserves the Interest of Justice.

The Supreme Court has identified the problem in direct terms. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). "Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers." *Id.*

That is this case.

*Continental Grain* matters for a deeper reason. The Court looked past formal differences and asked what, in substance, had to be adjudicated. One suit asserted claims against the barge and its owner; another suit arising from the same casualty was already pending in Memphis. *Id.* at 20–21. The barge's absence from Memphis did not change "the substance of what had to be done to adjudicate the rights of the parties." *Id.* at 26. The Court therefore refused to let an "ancient admiralty fiction" become a "weapon to defeat" § 1404(a)'s practical purpose. *Id.* at 23–25.

The same inquiry applies here. The *PPFA* action and this action assert identical claims, challenge the same priorities, and seek the same relief—vacatur of the agency priorities from the NOFO. *Compare* Compl., ECF No. 1 ¶¶ 11 & Prayer for Relief Sect. ii, with *PPFA* Compl., ECF No. 46-3 ¶¶ 211. Both are facial APA challenges, and Plaintiffs agree that both proceed on the same administrative record. Opp'n at 11, 15–16. If § 1404(a) looks past the distinction between a vessel and its owner, it likewise permits a court to look past different captions and ask what must

be decided. Plaintiffs have the significance of those differences backwards. The absence of witnesses, discovery, and district-specific factfinding does not diminish the duplication; it makes it more complete.

Indeed, to say this case resembles *Continental Grain* undersells the problem. Plaintiffs propose a schedule under which the same challenge would be adjudicated in two courts at the same time: identical claims, the same requested relief, and the same administrative record—with Plaintiffs' dispositive motion here due October 7, two days before the corresponding dispositive filing in the District of Columbia. *Continental Grain* found § 1404(a) was designed to prevent simultaneous proceedings involving "precisely the same issues." 364 U.S. at 26. This case presents that problem almost literally.

Nor is this concern abstract in this District. Judge Bennett recently held that the interest of justice favored transfer because doing so would "avoid duplicative litigation" and "avoid inconsistent rulings" in substantially overlapping proceedings. *Nanjing 3H Med. Prods. Co. v. KT Health, LLC*, No. RDB-24-2745, 2026 WL 2619904, *9 (D. Md. Sept. 4, 2026). *See also Ciers v. United States*, No. CDA-25-2849, 2026 WL 2444666, *6 (D. Md. Aug. 20, 2026) (finding overlapping litigation an additional reason favoring transfer under *Continental Grain*).

Plaintiffs' asserted sovereign interests and "distinct theories of injury," Opp'n at 12–13, 15–16, are theories of standing. They may bear on whether these Plaintiffs can sue; they do not change what the suit is about. Every count in the Complaint arises under federal law and challenges the NOFO under the Title X statute and regulations, the APA, and the Spending Clause. Compl. ¶¶ 193–224 (Counts I–IV). No count arises under Maryland law. The "state law" question Plaintiffs identify—whether an applicant can comply with state law and still compete, Opp'n at 18—is offered as an injury, not a claim. Compl. ¶¶ 188–89. And in any event, it is shared by every Plaintiff

State, not Maryland alone. Transfer does not deprive any Plaintiff of an opportunity to establish its own standing. It consolidates only the merits question those theories are offered to reach.

That practical inquiry runs through federal procedure. Federal principles have long established that choice of courthouse should not itself become a mechanism for obtaining a different legal result. This is not an *Erie* case, of course, but the concern has a federal-law counterpart: § 1404(a) "should not create or multiply opportunities for forum shopping," *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990), and courts managing overlapping federal actions are directed toward "wise judicial administration" and away from forcing parties to relitigate the same issues, *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952); *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2, 181–82 (4th Cir. 1974); *see Hanna v. Plumer*, 380 U.S. 460, 467–68 (1965) (the "twin aims" of *Erie* are discouraging forum shopping and avoiding inequitable administration of the laws).

The geography makes the concern concrete. The District of Columbia and Greenbelt courthouses are one Metro ride apart; Harrisburg is only a short drive further. By car, the Parties could have appeared and counsel could have argued these overlapping challenges in all three courthouses in a single day. Convenience cannot explain why the same facial challenge to the same federal document was brought before three judges in three circuits along roughly the same 120-mile corridor.

Nor did this filing introduce a distinct controversy. It brought no new facts, no new document, and no new legal question. It brought a third forum.

The Middle District of Pennsylvania has now ruled in *NFPRHA*. It held that the plaintiffs there had "not alleged a sufficiently concrete harm to satisfy Article III's case or controversy requirement"; that uncertainty over how best to apply for a grant "is not a sufficient hardship to

create a justiciable controversy"; and that a decision setting aside the challenged criteria would have "minimal utility in redressing Plaintiffs' stated harm," because "[a]n ambiguous set of scoring criteria, applicable to all applicants, does not impact competition differently than a clear set of criteria dictated by the court." *NFPRHA*, ECF No. 73 at 1, 7, 10. The dismissal was without prejudice to refiling "when the controversy becomes ripe." *Id.* at 10.

Defendants do not contend that ruling binds this Court, and whether this case is justiciable will be presented in Defendants' forthcoming motion to dismiss. The point for transfer is narrower. Plaintiffs here assert the same core pre-application hardship, at the same stage of the same competition, on the same record. *Compare* Compl., ECF No. 1, with *NFPRHA* Am. Compl., ECF No. 46-2. Nothing about the controversy changed when it crossed a state line. What changed is that one court has answered the threshold question, and substantially overlapping plaintiffs now ask two more courts to answer it again. Where the facts and asserted hardship are unchanged, an additional forum supplies another opportunity to obtain a different ripeness ruling, not a more developed controversy. But of course, a controversy does not ripen by crossing circuit lines.

Plaintiffs' proposed schedule exposes the procedural asymmetry. The Middle District's dismissal resolves no merits question and leaves a future ripe controversy available for adjudication, yet other plaintiffs may continue pressing the same challenge elsewhere on the same facts. A favorable ruling in one of those proceedings, by contrast, could produce relief affecting administration of the same nationwide competition. Maintaining parallel suits therefore creates repeated opportunities for a different threshold or merits answer without requiring the controversy itself to develop. That is a form of the forum shopping § 1404(a) exists to discourage, and the interest of justice points solidly the other way.

Plaintiffs' principal response is percolation, Opp'n at 14–15, but that argument proves too much. Every transfer of a duplicative federal-question case reduces the number of courts that will address it. If that were a reason to deny transfer, § 1404(a) would never reach duplicative litigation, and *Continental Grain* would have come out the other way.

Percolation also describes something different. *Mendoza* speaks of "several courts of appeals" exploring "a difficult question" before certiorari. 464 U.S. at 160. *Mendoza* protects the Government's ability to litigate recurring legal questions against different parties and different facts so that multiple courts of appeals may consider them. The case does not establish an affirmative interest in preserving simultaneous district-court litigation over the same agency action and the same record. Here the record is the same, the claims are the same, and the requested relief is the same. That is repetition, not percolation, and a third district court answering the same question on the same papers multiplies the answer.

Nor does *State of California v. Trump* help Plaintiffs. Opp'n at 14–15, 17. The passage they quote—that no Justice in *CASA* proposed "a first-to-file rule where suits are brought by different plaintiffs"—answers an argument Defendants do not make. Defendants did not invoke the first-to-file rule. They invoke § 1404(a), which has never required identity of plaintiffs. The question under *Continental Grain* is whether the actions involve "precisely the same issues," 364 U.S. at 26, and Plaintiffs concede the legal claims overlap. Opp'n at 13, 16. Justice Kavanaugh's concurrence predicted that limiting universal injunctions would produce more suits, not that district courts should decline to consolidate or streamline them.

The potential relief reinforces the point. HHS must administer one nationwide grant competition under one NOFO and one scoring system; applications are due January 11, 2027, and awards are expected April 1, 2027. Compl. ¶ 67. Separate decrees addressing which criteria may

be used, which applicants they cover, and when applications must be scored could require HHS to make different adjustments to the same competition—the "incompatible standards of conduct" that Rule 23(b)(1)(A), though inapplicable here, treats as a distinct institutional harm. And *Trump v. CASA, Inc.*, on which Plaintiffs themselves rely, Opp'n at 14–15, limits equitable relief to what is necessary for the parties before the court while leaving unresolved whether § 706 authorizes vacatur of agency action, 606 U.S. 831, 847–61 & n.10 (2025), so parallel suits can present different questions about the reach of relief against the same action.

Plaintiffs' own description of the case confirms the problem. They call the Title X competition "a zero-sum contest," explain that all three suits were filed to prevent the NOFO "from both disadvantaging them and advantaging competitors," and add that competitors in such contests "logically seek universal relief." Opp'n at 10 (citing *Corner Post, Inc. v. Bd. of Governors*, 603 U.S. 799, 834 (2024) (Kavanaugh, J., concurring)). In a zero-sum contest, relief that improves one competitor's position necessarily worsens another's, and relief that is universal by design is the kind two courts cannot each award on their own terms. The plaintiff groups also overlap: a Title X grantee may be an affiliate of the Plaintiff in the District of Columbia and a subrecipient of a Plaintiff State here. Compl., ECF No. 1 ¶¶ 71–115; *PPFA* Compl., ECF No. 46-3 ¶¶ 9–12. Addressing the identical challenges together permits coordinated consideration of both the legality of the criteria and the reach and timing of any relief.

## III. Plaintiffs' Forum Choice Does Not Justify Preserving That Fragmentation.

Plaintiffs' asserted home-forum interest, Opp'n at 6–9, should be measured by what practical advantage transfer would actually take away. Judge Bennett recently explained that the weight accorded a plaintiff's forum choice "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action," and is significantly reduced when the challenged conduct occurred elsewhere. *Nanjing*, 2026 WL 2619904, *7

(citation omitted). That principle reflects the premise behind home-forum deference: ordinarily, a plaintiff's choice of home indicates convenience. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981).

Transfer across the border preserves substantially the same proximity for Maryland, while the other twenty-two Plaintiffs are already litigating away from home. The caption underscores the point: the Governor of Pennsylvania is a Plaintiff here, and the federal court in Pennsylvania has now held that a substantially overlapping challenge presents no Article III case or controversy.

Plaintiffs say they did the opposite of fragmenting: twenty-three of them joined one action in one forum. Opp'n at 9. That describes the arrangement among themselves, not the controversy's position among courts. One NOFO governing one competition was before two federal courts when Plaintiffs filed; this action made it three. That twenty-three plaintiffs agreed on a third forum does not make it less a third forum. And the forum they agreed on is the one connected to one of the twenty-three—not the district where their co-plaintiff resides and the first challenge was then pending, and not the district where every Defendant resides and the challenged document issued.

Nor does this case require a Maryland court to apply Maryland law. Different States may prescribe different substantive rules; these cases ask federal courts to interpret the same federal law. As the D.C. Circuit explained, "there is no compelling reason to allow plaintiff to capture the most favorable interpretation of that law" through the initial choice of forum. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (addressing the law governing after a § 1407 transfer). Circuits may disagree, and their precedents bind the courts within them. But those differences reflect interpretation, not separate sovereign choices of governing law. A preference for one circuit's answer does not supply the missing convenience or local-law justification for maintaining a substantially overlapping proceeding here. Maryland's

interest in funding its programs explains its interest in the controversy, not why the neighboring federal court is materially less suited to resolve the same federal claims.

Plaintiffs say this is "not the rare case" in which a plaintiff's forum choice should be disturbed. Opp'n at 5 (quoting *Collins*, 748 F.2d at 921).[2] The rule presupposes that such cases exist. Consider this one. One federal document governing one nationwide competition, challenged in three districts along a 120-mile corridor, presenting identical legal theories, with overlapping plaintiff groups, on a record all three courts share. The first court held the controversy nonjusticiable. The second is a month from closing briefing on claims identical to these. The third—this one—was selected by one of twenty-three plaintiffs, in a district connected to the decision under review only by effects every other Plaintiff State also feels. And now, Plaintiffs propose to file their dispositive motion here two days before the corresponding filing in the District of Columbia. If that is not the rare case, there is no rare case.

## IV. The District of Columbia Is Now the Forum That Reduces Duplication.

Defendants moved to transfer this action to the Middle District of Pennsylvania or, in the alternative, to the District of Columbia. The Middle District action has since been dismissed for lack of Article III jurisdiction, *NFPRHA*, ECF No. 73 at 1, 10, so Defendants proceed on the alternative request. No first-filed obstacle remains. The only pending challenge to this NOFO is in the District of Columbia, where the claims and requested relief are identical to Plaintiffs' and briefing remains at a stage where coordination remains possible. *PPFA*, Minute Order (D.D.C. Aug. 25, 2026) (requiring PPFA file cross motion for summary judgment by Oct. 9, 2026).

---

[2] The "rarely disturbed" formulation quoted in *Collins* derives from *Gulf Oil v. Gilbert*'s common-law forum non conveniens standard. 330 U.S. 501, 508 (1947). The Supreme Court has since explained that § 1404(a) was intended to permit transfer on a "lesser showing of inconvenience" than forum non conveniens required and gives district courts broader discretion. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

Plaintiffs say transfer "would not eliminate parallel litigation altogether." Opp'n at 18. After the Middle District's dismissal, it will.

*Nanjing* confirms that filing order does not end the inquiry. There, Judge Bennett transferred the earlier Maryland action to the forum of a related suit filed months later, relying on Maryland's limited connection to the dispute, the convenience factors, and the opportunity to coordinate related litigation. 2026 WL 2619904, *6–10. While the precise balance differed there, *Nanjing* confirms the underlying point: filing order does not require a court to preserve duplicative litigation when § 1404(a)'s factors favor bringing related proceedings together.

D.C. also has important connections to the challenged decision. The NOFO was formulated and issued there; every Defendant resides there; and the administrative record was compiled there. Those are connections to the federal decision-making itself, distinct from Maryland's interest in funding its programs.

Most importantly, D.C. is where duplication can still be prevented. After transfer, the parties could propose a common schedule and coordinated dispositive briefing on the challenged priorities, using the same record citations while separately addressing any plaintiff-specific relief. The common work includes interpreting the same NOFO provisions, measuring them against the same statutory and regulatory requirements, and addressing the same request for vacatur. Transfer would organize that work together before separate briefing and decisions duplicate it.

Defendants' request is hardly tactical. Judge Cooper recently ruled against HHS in a related HHS grant policy case. *Hennepin County v. HHS*, 2026 WL 2426300 (D.D.C. Aug. 19, 2026). Defendants nevertheless seek that forum because the problem is institutional: one nationwide agency action, one administrative record, and one grant competition should not be fractured among overlapping suits, especially after one court has held the controversy nonjusticiable at this stage.

Plaintiffs say transfer would delay resolution before the January 11 application deadline. Opp'n at 19–20. The opposite is true. Briefing in the District of Columbia closes October 23. *PPFA*, Minute Order (D.D.C. Aug. 25, 2026). The schedule Plaintiffs propose here runs to November 18. *See* Ex. 2 (Sept. 17, 2026 email between counsel). Transfer places identical claims before a court whose briefing concludes a month earlier. That option was open on August 27. If the earliest possible resolution were the goal, as Plaintiffs say, why file a new action in a third district in front of a new judge instead of joining one already moving toward decision on identical claims a Metro ride away? And if, as they say, the case can be briefed "just as efficiently here," Opp'n at 20, it can also be briefed just as efficiently there. The only delay transfer introduces is the transfer order itself.

**V. Transfer Motion and Other Threshold Issues Should Be Resolved Before Merits.**

Finally, Defendants respectfully request that the Court resolve transfer before setting a merits schedule. Earlier this month, Judge Bennett considered a § 1404(a) transfer motion before several pending motions to dismiss "[i]n the interest of efficiency for the Parties and the Court." *Nanjing*, 2026 WL 2619904, *1. After transferring the action, he denied the remaining motions without prejudice to renewal in the transferee court. *Id.* at *10; *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 432 (2007) (threshold non-merits questions may be resolved before the merits). That makes even more sense here, where Plaintiffs ask to begin merits briefing while this motion is under advisement, Opp'n at 20, on a schedule that would have their dispositive motion on file October 7, Ex. 2. And if transfer is denied, Defendants' forthcoming motion to dismiss presents a second threshold question that should likewise be resolved before the merits, as it was in *NFPRHA* matter in the Middle District of Pennsylvania.

Plaintiffs' proposal inverts the proper order. A court may resolve a threshold transfer question before determining jurisdiction, *Sinochem*, 549 U.S. at 425, 432, and it must resolve

jurisdiction before reaching the merits, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Either way, merits come last. Here both threshold questions counsel against beginning summary-judgment briefing now. The Middle District has already held a substantially similar challenge outside Article III, and Plaintiffs would have this Court begin the very merits adjudication that court declined to undertake.

Venue shapes the briefing Plaintiffs propose to begin. Briefs shaped to one circuit's precedent would have to be revised under the other's. Plaintiffs' proposal risks duplicating briefing.

Transfer determines where this challenge is heard, not how it is resolved. Every argument remains available to Plaintiffs in a transferee court. Section 1404(a) reduces opportunities for different threshold rulings, different merits rulings, and different remedial commands.

**CONCLUSION**

For these reasons, the Court should transfer this action to the United States District Court for the District of Columbia.

September 21, 2026

Respectfully submitted,

/s/ *Landen P. Benson*
LANDEN P. BENSON
Attorney
GA Bar No. 863909
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, DC 20201
landen.benson@hhs.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, the foregoing was filed through the CM/ECF system, which will automatically generate notice upon all counsel of record.

/s/ *Landen P. Benson*

LANDEN P. BENSON
Attorney
GA Bar No. 863909
U.S. Department of Health and Human Services
200 Independence Ave., SW
Washington, DC 20201
landen.benson@hhs.gov

*Counsel for Defendants*