# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION and FAMILY HEALTH COUNCIL OF CENTRAL PENNSYLVANIA,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as United States Secretary of Health and Human Services, *et al.*,<br><br>Defendants. | : | Civil No. 1:26-CV-01684<br><br><br><br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a motion to dismiss Plaintiffs National Family Planning & Reproductive Health Association and Family Health Council of Central Pennsylvania's complaint filed by Defendants Robert F. Kennedy, Jr., *et al.* (Doc. 46.) Because Plaintiffs have not alleged a sufficiently concrete harm to satisfy Article III's case or controversy requirement, the court will grant Defendants' motion.

**BACKGROUND**

This lawsuit is about competition for federal grants. Title X of the Public Health Service Act authorizes the Secretary of Health and Human Services to award federal grants to applicants in order to "offer a broad range of acceptable

and effective family planning methods and services." 42 U.S.C. § 300(a). To solicit applicants, the United States Department of Health and Human Services ("HHS") releases a notice of funding opportunity ("NOFO") inviting interested parties to apply for these grants and explaining the criteria HHS will use to evaluate applications. (Doc. 35, ¶ 61.) HHS scores applications using a point system, and the 2027 NOFO allocates 35 of the possible 100 points to "alignment with agency priorities." (*Id.* ¶ 99.) Plaintiffs challenge HHS's "Anti-DEI" priority, "Anti-Gender Ideology" priority, "safeguard[ing] life affirming . . . program delivery" priority, "Reducing Overmedicalization" priority, and several other priorities. (*Id.* at 53–54.)[1] They argue these priorities conflict with the Title X regulations, required notice and comment rulemaking, and are arbitrary and capricious. (*Id.* at 48–53.) In response, Defendants contend that these complaints are not yet ripe for judicial review. (Doc. 46.)

Defendants moved to dismiss the complaint on July 31, 2026, and contemporaneously filed a brief in support. (Docs. 46, 47.) Plaintiffs timely filed a brief in opposition on August 20, 2026, and Defendants filed a reply on September 3, 2026. (Docs. 60, 67.) The court subsequently ordered supplemental briefing requiring the parties to address whether *Reno v. Catholic Social Services*, 509 U.S. 43 (1993), was relevant to the ripeness dispute in this case. (Doc. 62.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF headers.

Defendants filed their supplemental brief on September 3, 2026, and Plaintiffs followed suit on September 8, 2026. (Docs. 68, 69.) Thus, the motion to dismiss is ripe for resolution.

## STANDARD OF REVIEW

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pleaded and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Defendants sought dismissal before filing an answer to the complaint and, thus, present a facial attack on subject-matter jurisdiction. *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As a result, the court will presume the truthfulness of the allegations in the complaint in order to determine the merits of the jurisdictional claim.

## Discussion

Plaintiffs assert the court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2), as their claims arise under federal law, and 5 U.S.C. § 702, as their claims challenge final agency action. (Doc. 35, ¶ 5.) Defendants argue the court lacks subject matter jurisdiction because the claims are not ripe for judicial review.[2] (Doc. 46.)

Plaintiffs seek both injunctive and declaratory remedies, which courts will only apply to administrative actions if the controversy is ripe for judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977). The Court in *Abbott Labs* set out two

[2] Because Plaintiffs seek declaratory relief, the instant issue could be described in terms of either standing or ripeness. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017). The parties' briefs frame this as a ripeness issue, so the court usually refers to ripeness throughout.

considerations to gauge ripeness: (1) "the fitness of the issue for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. Because declaratory judgments are typically sought before an injury has occurred, the Third Circuit has refined the test in this context. Courts are to consider, among other factors, (1) the parties' adversity of interests; (2) the conclusiveness of a judgment; and (3) the utility to the parties of rendering a judgment. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990); *see also Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) ("[T]he foregoing factors are not exhaustive of the principles courts have considered in evaluating ripeness challenges."). Plaintiffs bear the burden of showing adversity, conclusiveness, and utility as the party invoking federal jurisdiction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–412 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Plaintiffs seem to allege several harms in their complaint. But in their briefs, Plaintiffs interpret the alleged harm as "a *competitive disadvantage* in the process for obtaining a benefit—rather than the denial of or *inability to obtain the benefit*

*itself*." (Doc. 69, p. 2.) Accordingly, the court analyzes whether this alleged harm presents a controversy ripe for judicial review under the *Step-Saver* framework.[3]

**A. Adversity**

Under *Step-Saver*, adversity is present "where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). There must be a "substantial threat of real harm" that remains "real and immediate throughout the course of the litigation." *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990)) (internal quotation marks omitted).

Here, the parties' interests are not sufficiently adverse to make Plaintiffs' claims ripe. Plaintiffs argue that adversity is present because Defendants refuse to foreclose the possibility that applicants may be penalized for complying with the regulations over the HHS's priorities. (Doc. 60, p. 29.) They allege that this exacerbates the confusion and hardship they currently face because they cannot produce applications tailored to both the regulations and the challenged priorities in the NOFO. *Id.*

---

[3] The discussion that follows is equally applicable to all of Plaintiffs' claims. So, while "standing is not dispensed in gross," the court does not repeat its analysis for each claim and each challenged provision of the NOFO. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

These arguments are ultimately unpersuasive. Despite their characterization of the NOFO, Plaintiffs do not face any penalty. The priorities in the NOFO do not place them at risk of future prosecution or terminate any current grant. *Cf. Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 58–59 (1993) (holding claim not ripe when a regulation imposed no penalties and only limited access to a benefit not automatically bestowed on eligible parties). Instead, what Plaintiffs face is uncertainty over how to best apply for a federal grant, and that is not a sufficient hardship to create a justiciable controversy. *Suburban Trails, Inc. v. N.J. Transit Corp.*, 800 F.2d 361, 366 (3d Cir. 1986) ("At most [Plaintiffs] face some uncertainty over their eventual inclusion in the grant program. That, however, is not sufficient hardship to cause a court to review agency action.").

Nor do Plaintiffs face a relevant competitive disadvantage. Plaintiffs allege that the NOFO "stacks the deck" against otherwise qualified applicants. (Doc. 35, ¶ 5.) That is not a real and immediate harm; it is an inherent feature of competitive grant programs. In any grant competition, the criteria for selecting awardees are going to favor some applicants and disfavor others. That is the point of a competitive process—to identify the applicants best suited for the grant. To be sure, this can cause harm when certain applicants are placed at a fundamental disadvantage. For example, in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993),

the Court held that restricting bidding on certain contracts to specific groups constituted an injury in fact. But that is not the case here. Plaintiffs do not allege they are barred from applying for a portion of the grants, and the NOFO's guidelines apply uniformly to all applicants.

In short, Plaintiffs face no penalties and can compete equally for the funding, so any harm absent a declaratory judgment is speculative. Courts engaging in such speculation run afoul of Article III. *See Clapper*, 568 U.S. at 414–15, n.5.

**B. Conclusiveness**

Plaintiffs' arguments on conclusiveness fall short for similar reasons. A judgment is conclusive if it changes or clarifies the legal status of the parties. *Travelers Ins. Co.*, 72 F.3d at 1155 (citing *Step-Saver*, 912 F.2d at 648). The judgment should also be based on a set of concrete facts, although there is less need for a developed record when the question presented is "predominantly legal." *Armstrong*, 961 F.2d at 412 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (3d Cir. 1983)) (internal quotation marks omitted).

Plaintiffs posit that their claims present purely legal questions and that a decision from the court will clarify the legal rights of the parties by "delineating the scope of the NOFO and what Plaintiffs' members must write in their

applications now." (Doc. 60, p. 31.) The court disagrees because there is no legal right here that a decision can clarify. The NOFO is an invitation to apply for a grant, and, despite Plaintiffs' assertions, it neither forces Plaintiffs to act nor bestows any rights. (*See generally* Doc. 35-2.) Right now, Plaintiffs are free to tailor their applications in any way they like or even ignore the NOFO entirely when submitting their applications. That may put Plaintiffs at risk of a lower score or denial of funding, but Plaintiffs have made clear that they are not challenging that. (Doc. 60, p. 20.)

The court agrees that the issue at hand is purely legal and that further factual development would be only incrementally helpful, but the nature of a claim as purely legal is not sufficient to satisfy Article III. *Armstrong*, 961 F.2d at 421. And federal courts are not a forum for parties to question the legality of every government action. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Even a purely legal question falls outside the court's jurisdiction without a concrete injury sufficiently ripe for review. Otherwise, "courts would soon be overwhelmed with requests for what essentially would be advisory opinions." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 811 (2003).

**C. Utility**

The utility inquiry goes to "whether the parties' plans of actions are likely to be affected by a declaratory judgment." *Step-Saver*, 912 F.2d at 649 n.9. Plaintiffs

claim that an order from the court setting aside the challenged provisions of the NOFO would clarify how they should write their applications. That is a fair claim, but it is unrelated to the harm Plaintiffs allege. Plaintiffs' asserted harm is competitive disadvantage. (Doc. 69, p. 2.) The NOFO is a generally applicable set of criteria that the agency will use to award points to applications. So, any decision from the court would necessarily impact how both they and their competitors would structure and be scored on their applications. An ambiguous set of scoring criteria, applicable to all applicants, does not impact competition differently than a clear set of criteria dictated by the court. A decision from the court would thus have minimal utility in redressing Plaintiffs' stated harm.

## CONCLUSION

For the reasons explained, the court will grant Defendants' motion to dismiss. The dismissal is without prejudice to Plaintiffs refiling this litigation when the controversy becomes ripe. Plaintiffs' motion for summary judgment or, in the alternative, a preliminary injunction and Defendants' motion for summary judgment will both be denied as moot. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 17, 2026