# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | * | Case No. 1:26-cv-03405-DLB |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * *

**DECLARATION OF RUTH BLODGETT**

I, Ruth Blodgett, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Director of the Bureau of Community Health and Prevention at the Massachusetts Department of Public Health (DPH), a position I have held since 2019. My work includes oversight, strategic direction, financial and operational leadership for programs, policies, direct services and investments designed to improve health for people and communities oriented to reduce and prevent issues such as chronic disease, injuries and violence and improve access to healthy environments and access to healthcare. In this capacity, I am familiar with the Commonwealth's administration, funding, and delivery of family planning and related preventative health services, including services supported through the federal Title X program.

2. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

Massachusetts's Title X-Funded Family Planning Programming

3. The Commonwealth of Massachusetts, through its DPH, is a direct recipient of Title X funding. DPH uses Title X funding to support its Sexual and Reproductive Health Program ("SRHP" or "the Program"), which is within the Bureau of Community Health and Prevention. The Program serves as the foundation of the Commonwealth's reproductive health care safety net by funding a network of providers offering voluntary, confidential, high-quality sexual and reproductive health services regardless of patients' ability to pay, and with respect for each patient's unique needs. The Program's network operates statewide, with sites and subrecipients in Beverly, Boston, Brockton, Cambridge, Chicopee, Everett, Fall River, Falmouth, Fitchburg, Framingham, Gloucester, Greenfield, Haverhill, Holyoke, Hyannis, Lawrence, Lowell, Malden, Marlborough, Medford, Montague, Nantucket, New Bedford, North Adams, Northampton, Orange, Peabody, Pittsfield, Plymouth, Revere, Salem, Somerville, Springfield, Taunton, Tisbury, Wareham, and Worcester. DPH has participated in the Title X family planning services project grant program through SRHP during the years 2014–2019 and 2022–present.

4. For Fiscal Year 2026, SRHP had a total annual budget of approximately $20,455,000, consisting of $5,568,999 in federal Title X funding and $14,886,000 in state funding. These funding sources collectively support the Commonwealth's family planning program and provider network. In Massachusetts, all 21 subrecipient agencies receive blended state and Title X funding.

5. DPH administers its Title X grant both directly and through 21 subrecipients, including one safety net hospital, one university health center, 13 federally-qualified health centers, two community action programs, and four non-profit organizations. Many of these subrecipients are longstanding members of the Commonwealth's Title X network, and some received direct grants for decades before DPH assumed responsibility for administering and coordinating a statewide network

in the 2010s.

6. As of September 2026, DPH's Title X network includes 73 service sites. During 2025, its providers served approximately 103,709 individuals through approximately 152,875 visits. They conducted 33,398 gonorrhea tests, 23,576 syphilis tests, 49,674 HIV tests, 27,102 chlamydia tests, and 15,040 Pap tests.

7. In many Massachusetts communities, Title X providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care. In 2025, 50,303 individuals served (48%) had household incomes at or below 100% of the federal poverty level and thus received services at no cost; additionally, of the total served,10,440 (10%) were uninsured and 49,818 individuals (48%) had public coverage.

8. The Title X program addresses significant public health needs within Massachusetts. While Massachusetts has one of the highest rates of insurance coverage in the country, there are still individuals that are without insurance coverage at certain points in the year due to changing eligibility requirements and seasonal work. For many of these individuals, Title X clinics offer some of the only access points to care during periods of uninsurance. Throughout the state but especially outside the metro Boston area, waits for primary care providers can be long, and Title X clinics offer immediate access for care that is often urgent and cannot be delayed. Title X-funded providers play an essential role in addressing these needs by providing, among other things, preconception health services and counseling; basic infertility services; pregnancy testing and counseling; FDA-approved long-acting and short-acting contraceptives; natural family planning methods; comprehensive STI and HIV-related services (including education, counseling, screening, treatment, PrEP, PEP, and expedited partner therapy); breast and cervical cancer screening; HPV vaccination; screening for intimate partner violence, mental health, obesity, and substance use; and adolescent-friendly health services.

9. Whenever it has accepted and drawn down Title X funds, DPH has faithfully complied with applicable law and regulations, including, for example, (i) the Office of Population Affairs ("OPA") guidance, including implementing recommendations from the 2014 and, if applicable, (ii) 2024 editions of OPA's own *Providing Quality Family Planning Services* ("QFP") publication, to the extent required by OPA in its 2014 Title X Family Planning Guidelines, (iii) applicable Funding Opportunity Announcements, and, (iv) the Title X Handbook (when it previously applied. DPH has invested time, money, and effort to ensure it funds the provision of quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations. It has developed durable infrastructure to support the SRHP, such as the Massachusetts Sexual and Reproductive Health Training Center, which provides training, technical assistance, and resources to program clinicians, administrators, support staff, and other family planning service professionals—including Title X-specific trainings designed to ensure the family planning services workforce meets regulatory standards. DPH has adapted its programming to implement specific past OPA feedback, including developing a comprehensive Policies and Procedures manual and updating subrecipient contracts to include detailed information regarding confidentiality and non-coercive nature of Title X services after the most recent DPH site visit in 2025. DPH has also used OPA-provided program review tools to assess its own compliance and that of subgrantees; attended Reproductive Health National Training Center trainings; offered additional funding ($50K - $75K) to each subrecipient plus funding to our data vendor to support the transition to OPA Family Planning Annual Report (FPAR) 2.0 data requirements, including collection and reporting of sexual orientation and gender identity; and directed the Massachusetts Sexual and Reproductive Health Training Center to create and offer several trainings on providing comprehensive, high-quality services to specific groups of individuals, including those who identify as transgender and non-binary and individuals with disabilities.

Massachusetts's Title X Application and the 2027 NOFO

10. DPH is responsible for preparing and submitting the Commonwealth's Title X application. Preparing the application requires substantial work by Commonwealth personnel and coordination with the DPH's Title X subrecipients and other program partners.

11. Preparing our Title X application takes DPH significant time and resources. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; developing budgets and performance measures; and completing internal review and approval processes. The application requires the Commonwealth to make decisions about its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins. The application also must undergo an internal review process, with multiple layers of programmatic and legal review, followed by editing and formatting by DPH's grants manager. As a public agency, we must also comply with state law mandates such as engaging in a competitive procurement process and abiding by other comptroller notification and regulatory requirements. *See, e.g.*, Mass Gen. Laws ch. 29, § 6B; 815 Mass. Code Regs. 2.00.

12. Completing this complex process to assemble an application for our statewide network by January 11, 2027 the current due date for applications set by OPA, requires beginning our application process months in advance. Because state law requires that we use a competitive procurement vehicle to identify our network of proposed subrecipients before submitting any application, we will use our existing procurement to continue to work with our existing subrecipients, many of whom are long-term participants in our Title X program. We held a series of drop-in sessions for existing providers in our Title X network in July 2026 to discuss the changed NOFO. We then had an internal kickoff meeting on July 30 and are now in the midst of carrying out site surveys and services requests to fulfill the NOFO's request for such detailed information as hours of

operation, when clinicians are present, specific services delivered by site, and anticipated productivity.

13. Massachusetts has never been denied a grant award since the first time it applied for Title X family planning services project grants in 2014 (as noted elsewhere, it has not applied every year). Historically, Massachusetts has based its Title X application substantially on its existing program and provider network.

14. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. DPH has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the Commonwealth's existing Title X program.

15. In particular, DPH understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health, and the U.S. Department of Health and Human Services. The priorities concern, among other things, diversity, equity, and inclusion and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months), on pain of termination.

16. OPA has not made clear what is required to comply with the new Agency Priorities. This uncertainty makes assembling Massachusetts's application challenging. That difficulty is compounded by the fact that some priorities appear to be in tension, if not conflict, with existing laws and regulations. For example, DPH has trained Title X providers to offer quality, inclusive, nondiscriminatory family planning services care for transgender clients, in accordance with 42

C.F.R. Part 59, Subpart A §59.5, which requires that Title X providers offer "services that are client-centered, culturally and linguistically appropriate, inclusive, and trauma-informed; that protect the dignity of the individual; and that ensure equitable and quality service delivery consistent with nationally recognized standards of care" and "services that do not discriminate against any client based on religion, race, color, national origin, disability, age, sex, sexual orientation, gender identity, sex characteristics, number of pregnancies, or marital status". DPH is uncertain how to reconcile these legally-required services with the NOFO's requirement to align with the "biological reality that a person's sex, as either male or female, is unchangeable and determined by objective biology."

17. An additional OPA priority that is unclear is priority #2, "Reducing overmedicalization in health care and increasing focus on optimal health through the delivery of Title X services." In the NOFO's description of this priority, they note that "OPA recognizes the overreliance on pharmaceutical and surgical treatments." However, the very first requirement under 42 C.F.R. Part 59, Subpart A §59.5 is that Title X grantees offer "a broad range of [family planning] methods and services" which include both pharmaceutical and surgical interventions to prevent pregnancy. OPA has not explained how Title X grantees can create effective programs while "reducing overmedicalization" or the reason for this change in priorities.

18. Massachusetts's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the Commonwealth would ordinarily expect to continue that programming, which has proven successful. To the extent the Commonwealth must modify its existing program or application to address the new Agency Priorities, doing so would require additional, resource-intensive administrative review, coordination, planning, staff training for both DPH and subrecipient staff, and potentially programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the Commonwealth's

ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in DPH.

19. Family planning has been shown to be one of the great public health achievements of the 20th century, due to the impact on infant, child, and women's health and concomitant changes in the social and economic role of women. Access to quality family planning services is good for individual health and the health of communities, and investments in family planning are cost-saving.[1] The changes proposed by the OPA priorities would undermine the effectiveness of Title X programs and have impacts on public health far beyond care historically supported by these programs.

Consequences of Losing Title X Funding

20. If DPH does not receive Title X funding for the grant cycle beginning in 2027, Massachusetts could not replace that approximately $5,568,999 federal funding with state dollars or other funding sources as there is no existing state funding stream for such purpose. Furthermore, notification of grant awards for past Title X grants has typically come very late, most often a few days after the start date of the grant cycle. The combination of loss of funding and very short notification times would make it especially difficult for DPH and subrecipients to plan for meeting payroll for staff funded on the Title X grant and covering other grant expenses.

21. Without sufficient replacement funding, DPH could not fund its current Title X network in full. In Massachusetts, this would likely mean reduced services and/or loss of provider sites and health centers, loss of staff positions, and reduced access to care for individuals who currently receive Title X-funded services each year. Those who seek services in Massachusetts are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

22. The Commonwealth would also face fiscal consequences from the loss of Title X-

[1] https://www.ansirh.org/research/ongoing/cost-effectiveness-providing-contraceptives

funded services. Patients who currently rely on Title X-funded programs for affordable family planning, sexually transmitted infection screening and treatment, and related preventative care may have to forego these cost-effective early-stage interventions or seek replacement care from other sources such as emergency departments. This could increase demand for services supported by Commonwealth and local resources and could increase public expenditures for care that Title X-funded providers currently provide or help prevent through early screening, treatment, and preventative services. Some patients may be unable to obtain this critical heath care at all. This will lead to poor health outcomes and more costly health care needs for residents in the immediate and long-term.

23. Title X funding currently pays for administrative costs and staff, medical supplies, contraceptives purchased in bulk, rent, utilities, and other critical costs throughout the Commonwealth's provider network as well as 2.37 FTEs at DPH. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity; longstanding community partnership; significant geographic gaps in care, especially in rural areas; and closure of organizations that provide many services other than Title X clinical services, such as rent and heating assistance, food pantry services, and childcare. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

24. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Massachusetts beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems, and reduce access to care for residents throughout Massachusetts who rely on the Commonwealth's Title X program and Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed October 8, 2026, in Boston, Massachusetts.

/s/
Ruth Blodgett
Director, Bureau of Community Health and Prevention
Massachusetts Department of Public Health
100 Cambridge Street, 19th Floor
Boston MA 02114-2509