# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | * | Case No. 1:26-cv-03405-DLB |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * *

**DECLARATION OF MEG SULLIVAN, MD, MPH**

I, Meg Sullivan, MD, MPH, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Deputy Secretary for Public Health Services at the Maryland Department of Health (MDH) within the State of Maryland, a position I have held since August 2025. I have nearly 20 years of experience across public health, human services, and healthcare service delivery. I am a Board-certified pediatrician with a Medical Doctorate (M.D.) degree from the University of California, San Diego School of Medicine and a Master of Public Health (MPH) from the Johns Hopkins Bloomberg School of Public Health in Baltimore, Maryland. In my role as Deputy Secretary for Public Health Services, I oversee the Public Health Services Administration, and specifically the Prevention and Health Promotion Administration (PHPA). The Prevention and Health Promotion Administration includes the Office of Family and Community Health Services (OFCHS) in the Maternal and Child Health Bureau, where the Maryland Family Planning Program (MFPP) is administered. In this capacity, I am familiar with the State's administration, funding, and

delivery of family planning and related preventative health services, including services supported through the federal Title X program.

3. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

Maryland's Title X-Funded Family Planning Programming

4. The State of Maryland, through MDH, is a direct recipient of Title X funding. Maryland uses Title X funding to cover the costs of its MFPP, which provides comprehensive, confidential, and affordable family planning and reproductive health services, including contraception, sexually transmitted infection (STI) testing and treatment, and cancer screenings, across the State. The State has participated in the Title X program continuously for over 50 years.

5. For State Fiscal Year (SFY) 2026, MFPP had a total annual budget of approximately $10,538,481, consisting of $3,778,151 in federal Title X funding, and $6,760,330 in State funding. These funding sources collectively support the State's family planning program and provider network. In Maryland, state and federal funds are braided to support MDH infrastructure and subrecipients. The SFY2026 budget is $400,000 higher than the State's typical annual funding for family planning and related preventative health services due to a one-time legislative supplement.

6. Maryland administers Title X through twenty-three subrecipients, including nineteen Local Health Departments and four nonprofit organizations. Most of these providers are longstanding members of the State's Title X network.

7. As of August 2026, Maryland's Title X network includes sixty-four health centers. During SFY2025 (July 1, 2024 – June 30, 2025), these providers served approximately 51,561 individuals through approximately 77,475 visits.

8. In SFY2025, approximately 61.4% of individuals received services at no cost,

approximately 29.8% who received services were uninsured and 27.5% had public insurance, and approximately 86.5% had household incomes at or below 250% Federal Poverty Level. In many Maryland communities, these providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care.

9. The Title X program addresses significant public health needs within Maryland, such as rising rates of STIs including chlamydia, gonorrhea, HIV, and syphilis. Notably, syphilis testing nearly tripled between SFY2021 and SFY2025, alongside a consistently high demand for urgent and symptomatic care, which accounted for over 89% of clinical encounters across sites in SFY2025. Title X-funded providers play an essential role in addressing these needs by providing, among other services, comprehensive STI/HIV screening and treatment, basic infertility services, cancer screenings, and offering confidential care for low-income, uninsured, and adolescent populations.

10. Whenever it has accepted and drawn down Title X funds, MDH has faithfully complied with applicable law and regulations. During its participation in the Title X program, MDH has followed applicable guidance from the U.S. Department of Health and Human Services (HHS), Office of Population Affairs (OPA), including implementing recommendations from the 2014 and, if applicable, 2024 editions of OPA's own *Providing Quality Family Planning Services* (QFP) publication, to the extent required by OPA in its 2014 Title X Family Planning Guidelines, applicable Funding Opportunity Announcements, and in individual grant terms and conditions. MDH has invested time and effort to ensure it provides quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations: As applicable during its participation, it has worked hard to adapt its programming to implement past OPA feedback, used OPA-provided program review tools to assess its own compliance and that of subgrantees, attended Reproductive Health National Training

Center trainings, updated data collection infrastructure across subrecipients to ensure precise federal reporting, and offered training opportunities annually to maintain alignment with updated QFP and Title X guidelines.

<u>Maryland's Title X Application and the 2027 NOFO</u>

11. MDH is responsible for preparing and submitting Maryland's Title X application. Preparing the application requires substantial work by State personnel and coordination with the State's Title X subrecipients and other program partners.

12. Preparing our Title X application takes MDH significant time and resources. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; developing budgets and performance measures; and completing internal review and approval processes. The application requires the State to make decisions about the needs of the state, its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins.

13. Maryland has applied for Title X family planning services project grants for over 50 years and has never been denied a grant award. Historically, Maryland has based its Title X application substantially on its existing program and provider network.

14. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity (2027 NOFO) on July 9, 2026. MDH has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the State's existing Title X program.

15. In particular, MDH understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health (OASH), and HHS. The priorities concern, among other things, diversity, equity, and inclusion and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde

Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

16. Applying for funding under the 2027 NOFO has required and will continue to require the State to devote extra staff time and resources to determining if and how its existing program must be modified to address the new Agency Priorities while continuing to comply with existing Title X requirements. Maryland is faced with a difficult choice: on the one hand, it can apply under the 2027 NOFO without changes to its existing Title X program, which it knows to be efficacious, and risk losing funding in the event the Office of Population Affairs decides that program does not sufficiently align with the new Agency Priorities; or, on the other hand, it can make changes to its established program in an attempt to further align with the new Agency Priorities and maintain federal funding, despite the vagueness of new grant conditions, and even though doing so may disrupt services, provider relationships, and many other aspects of the State's existing Title X programming.

17. In addition, it has not been made clear to MDH what is required to comply with the new Agency Priorities. This creates a challenge for assembling Maryland's application. The difficulty in assembling an application is compounded by the fact that some priorities appear to be in tension, if not conflict, with existing laws and regulations. Specifically, guidance related to directive counseling and overmedicalization, to the extent it discourages certain forms of contraception, directly conflict with established statutory requirements under Title X (42 U.S.C.§ 300 et seq.) and Maryland public health law, which mandates the provision of voluntary, comprehensive, method-neutral, and medically accurate family planning services. Based on my professional experience, forcing grantees to alter counseling or restrict access to certain

contraceptive methods undermines clinical standards of care, violates patient autonomy, and creates irreconcilable legal conflicts for state health agencies bound by statutory obligations to provide comprehensive reproductive healthcare.

18. Maryland's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the State would ordinarily expect to continue that programming, which has proven successful. To the extent the State must modify its existing program or application to address the new Agency Priorities, doing so would require additional, resource-intensive administrative review, coordination, planning, and programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the State's ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in Maryland.

19. The 2027 NOFO introduces vague language and undefined conditions—including the "Directive Counseling Condition" and the "Overmedicalization Condition"—that leave MDH and its subrecipients without clear guidance on what is required for compliance. The NOFO fails to establish objective standards or define key terms, making it arduous and burdensome to determine how OPA will evaluate applications or monitor ongoing grant execution. Furthermore, these new conditions create direct misalignment with longstanding Title X statutory mandates under 42 U.S.C. § 300 et seq.; federal regulations at 42 C.F.R. Part 59; and established clinical standards, such as the OPA/CDCQFP guidelines. Specifically, while existing standards mandate client-centered counseling and the provision of a broad range of acceptable and effective family planning methods, the 2027 NOFO's vague restrictions on "overmedicalization" may be interpreted as discouraging or deprioritizing standard, evidence-based clinical methods, such as hormonal contraception. As an applicant and administrator, MDH has been unable to determine how these

requirements are to be interpreted and implemented consistently with existing statutory and clinical standards, resulting in uncertainty regarding the appropriate structure of its application and administration of its subrecipient network.

20. The requirements signaled in the 2027 NOFO potentially conflict with Maryland law and the statutory framework governing the MFPP. Under state law, MDH is required to maintain a Family Planning Program to ensure the continuity of comprehensive family planning services across the State (Md. Code Ann., Health-Gen. § 13-3402(a)–(c); COMAR 10.09.58). This statutory mandate requires that individuals receiving services through MFPP have access to a full spectrum of medically approved, evidence-based contraceptive methods and services. Furthermore, Maryland law explicitly provides that the Department may not accept any federal funding under Title X if the Title X program does not require family planning providers to provide a broad range of acceptable and effective medically approved family planning methods and services (Md. Code Ann., Health-Gen. § 13-3402(f)(1)(ii)). If compliance with the 2027 NOFO requires MDH to reduce or restrict the scope of family planning services offered—specifically by restricting or discouraging hormonal contraception or other safe and effective FDA-approved methods—MDH could not comply without violating Maryland law. Maryland law strictly prohibits accepting Title X funds under such restrictions (Md. Code Ann., Health-Gen. § 13-3402(f)(2)), any requirement to restrict or reduce this scope of services would force MDH to withdraw from participation in Title X to preserve state-mandated standards of care.

21. The 2027 NOFO priorities potentially conflict with the Maryland Department of Health's core public health mission and statewide health priorities. A cornerstone of Maryland's public health strategy is improving maternal and infant health outcomes through timely birth spacing, preconception care, and the prevention of unintended pregnancies. Allowing individuals to postpone pregnancy through highly effective contraceptive methods—including hormonal

contraception—until they are in a stable position with respect to their physical health, emotional well-being, and financial circumstances is an evidence-based approach to reducing maternal and infant morbidity and mortality. The 2027 NOFO's treatment of effective contraceptive methods in the context of addressing "overmedicalization" creates uncertainty regarding the extent to which the State may continue to support and implement these methods as part of its established public health practices, including efforts to promote healthy births and address maternal and infant health disparities across Maryland.

<u>Consequences of Losing Title X Funding</u>

22. If Maryland does not receive Title X funding for the grant cycle beginning in 2027, Maryland does not have an identified funding source to replace that approximately $3,778,151 of federal funding.

23. Without sufficient replacement funding, Maryland could not fund its current Title X network in full. In Maryland, this would likely result in reduced services and/or loss of provider sites and health centers, loss of staff positions, and reduced access to care for individuals who currently receive Title X-funded services each year. Those who seek services in Maryland are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

24. The State would also face fiscal consequences from the loss of Title X-funded services. Many patients who can no longer obtain affordable family planning, sexually transmitted infection screening and treatment, and related preventative care through Title X-funded providers may have to forego these cost-effective early-stage interventions or seek replacement care from other sources such as federally qualified health centers (FQHCs), which may have limited capacity and longer appointment wait times. In addition, Title X provides an important source of funding for comprehensive family planning services for uninsured individuals, and comparable services may

not be readily available through other funding sources or providers. While Medicaid remains available for eligible clients, reduced or eliminated grant funding would result in significantly reduced support for service infrastructure, particularly among local health departments. This reduction in infrastructure and capacity could also affect the delivery of other public health services, including immunizations, cancer screening, behavioral health services, and substance use screening and referral. These disruptions would lead to poor health outcomes and more costly health care needs for state residents in the immediate and long-term. Maryland is likely to bear these costs through their state Medicaid programs.

25. Title X funding currently pays for staffing, supplies, equipment, training, medications, and travel throughout the State's provider network. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, long standing community partnerships, and trusted, established referral networks and care linkages that provide critical safety-net access for uninsured and low-income residents. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

26. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Maryland beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems, and reduce access to care for residents throughout the State who rely on the State's Title X program and Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 29th day of September 2026, in Baltimore, Maryland.

Meg Sullivan, MD, MPH
Public Health Services, Deputy Secretary
Maryland Department of Health
201 W Preston Street, Baltimore, MD 21201