# EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | * | Case No. 1:26-cv-03405-DLB |
| | * | |
| Defendants. | * | |
| | * | |

*  *  *  *  *  *  *  *  *  *  *  *

**DECLARATION OF TRAVIS O'DONNELL**

I, Travis O'Donnell, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Director of the Center for Community Health at the Department of Health within the State of New York, a position I have held since 2023. From 2014 to 2023, I held various roles in the Department of Health AIDS Institute, including Associate Director for Surveillance, Prevention, Drug User Health, and School Reopening Services and Director of the Bureau of Sexual Health and Epidemiology. Before that, I worked in community-based organizations on grant administration and program implementation. Currently, my work includes overseeing a portfolio that encompasses hundreds of staff and billions of dollars in state and federal funding. I direct five Divisions including Vaccine Excellence, Epidemiology, Nutrition, Chronic Disease Prevention, and Family Health (which houses the Title X program). The Center for Community Health bases its programming around the experiences of populations placed at highest risk for negative health

outcomes, including pregnant people and those marginalized by systemic health inequities. In my role, I am responsible for program development, administration, funding, implementation, and evaluation across the Center for Community Health enterprise. In this capacity, I am familiar with the State's administration, funding, and delivery of family planning and related preventative health services, including services supported through the federal Title X program.

3. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

New York's Title X-Funded Family Planning Programming

4. The State of New York, through the New York State Department of Health is a direct recipient of Title X funding. New York uses Title X funding to cover the costs of the New York State Comprehensive Family Planning and Reproductive Health Program (New York State Family Planning Program). Subrecipients funded through this program provide high-quality, confidential, and accessible reproductive health care services at little to no cost to all individuals of reproductive age. The New York State Family Planning Program ensures access to a wide range of reproductive health services, including contraception, pregnancy testing, and non-directive options counseling; education and preventative care, including breast and cervical cancer screening, sexually transmitted infection (STI) testing, treatment and prophylaxis; and bi-directional referrals to provide a full range of health and social service referrals to meet client needs. The State has participated in the Title X program continuously since the 1970s.

5. For Fiscal Year 2026, the New York State Family Planning Program had a total annual budget of approximately $54,684,817, consisting of $11,154,003 in federal Title X funding, $41,006,400 in State funding, and $2,524,414 from federal Title V funding. The Fiscal Year 2026 budget is representative of the State's typical annual funding for family planning and related

preventative health services. These funding sources collectively support New York's family planning program and provider network. In New York, funding has been braided to maximize resources available to support family planning service delivery contracts in communities across the State.

6. In New York State, the Department of Health and the nonprofit organization Public Health Solutions each receive direct funding from Title X. The Department of Health provides funding to 35 subrecipient organizations including 6 local health departments, 10 Federally Qualified Health Centers, 10 Hospitals and 9 other Article 28 providers. Many of these providers are longstanding members of the State's Title X network.

7. As of September 2026, New York's Title X network includes 165 health centers. During 2025, these providers served approximately 253,656 individuals through approximately 379,122 visits. These sites delivered approximately 527,901 STI tests, 354,253 contraceptive services including counseling and provision, and nearly 87,997 cancer screenings.

8. In 2025, approximately 7% of individuals received services at no cost, approximately 18% who received services were uninsured and nearly 53% had public insurance, and approximately 80% had household incomes at or below the federal poverty level. In many New York communities, these providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care.

9. The Title X program addresses significant public health needs within New York State by expanding access to affordable, comprehensive family planning services for individuals who otherwise face geographical, financial, and other barriers to care. Despite New York's robust reproductive health infrastructure, access remains uneven, and many individuals live in areas where the full range of contraceptive methods and family planning services are not available. Currently, 1,127,400 women in need of contraceptive services live in areas where access to the full range of

contraceptive methods is not available to them. These gaps are particularly important because approximately 22% of pregnancies in New York are unplanned. Effective contraception is a key public health strategy for preventing unintended pregnancy and reducing maternal morbidity and mortality. The New York State Family Planning Program addresses these needs by supporting a network that offers a broad range of contraceptive methods along with pregnancy testing and counseling. For many individuals, a Title X family planning clinic is an entry point into the health care system.

10. New York State family planning clinics serve as important safety net providers of STI screening, treatment and prevention. Within the New York State Title X family planning network, services include screening and treatment for STIs and HIV, STI self-testing, expedited partner therapy, and PrEP and PEP services. This is particularly important because many STIs can occur without symptoms and left untreated can result in serious health complications including infertility in both men and women.[1] In 2025, The family planning network delivered 527,901 STI tests. By integrating community education efforts, screening, treatment, counseling and linkages to ongoing care into accessible family planning settings, the network helps reduce barriers to sexual health services through the Title X program.

11. Whenever it has accepted and drawn down Title X funds, the Department of Health has faithfully complied with applicable law and regulations. During its participation in the Title X program, the Department of Health has followed applicable Office of Population Affairs ("OPA") guidance, including implementing recommendations from the 2014 and 2024 editions of OPA's own *Providing Quality Family Planning Services* ("QFP") publication, to the extent required by OPA in its 2014 Title X Family Planning Guidelines, applicable Funding Opportunity Announcements, and in individual grant terms and conditions. The Department of Health has invested time and effort to

[1] Available at https://pmc.ncbi.nlm.nih.gov/articles/PMC13387761/.

ensure it provides quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations. As applicable during its participation, it has worked hard to adapt its programming to implement past OPA feedback, used OPA-provided program review tools to assess its own compliance and that of subgrantees, attended OPA-endorsed trainings and conferences hosted by the Reproductive Health National Training Center (RHNTC) and the Clinical Training Center for Sexual and Reproductive Health (CTC-SRH).

12. OPA also required all Title X grantees to begin transitioning from entering aggregated data in summary table format to submitting detailed client encounter-level data, beginning in 2022 with completion by 2025. Within the client encounter-level data, OPA required inclusion of 23 additional data elements using standardized codes. These changes were intended to provide more granular data that OPA and grant recipients could use to improve the quality of services. While New York State has been collecting client encounter-level data for many years through its vendor-supplied data management and information system (DMIS), the additional data elements required significant changes to the Department of Health's workflow and data reporting requirements. From May 2022 through late 2024, two staff members spent approximately 5 hours per week, for a total of approximately 564 hours, working with the DMIS vendor and the agencies and their Electronic Health Record (EHR) vendors to ensure their ability to collect and submit the required data properly. Over that time span, agencies vouchered against their New York State Family Planning Program contracts for a total of $260,000 to cover EHR vendors' costs for upgrading their systems. Revisions for the DMIS were covered within the data vendor's contract.

<u>New York's Title X Application and the 2027 NOFO</u>

13. The Department of Health is responsible for preparing and submitting New York's Title X application. Preparing the application requires substantial work by State personnel and

coordination with the State's Title X subrecipients and other program partners.

14. Preparing our Title X application takes the Department of Health significant time and resources. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; developing budgets and performance measures; and completing internal review and approval processes. The application requires the State to make decisions about its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins.

15. New York has applied for Title X family planning services project grants since the 1970s. Historically, New York has based its Title X application substantially on its existing program and provider network.

16. OPA issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. The Department of Health has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the State's existing Title X program.

17. In particular, the Department of Health understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health, and the U.S. Department of Health and Human Services. The priorities concern, among other things, diversity, equity, and inclusion (DEI) and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

18. Applying for funding under the 2027 NOFO has required and will continue to require the State to devote extra staff time and resources to determining if and how its existing program must

be modified and to address the new and vague Agency Priorities while continuing to comply with existing Title X requirements.

19. In addition, it has not been made clear to the Department of Health what is required to comply with the new Agency Priorities. This creates a challenge for assembling New York's application. The difficulty in assembling an application is compounded by the fact that some priorities appear to be in tension, if not conflict, with existing laws and regulations.

20. The current network of New York State Family Planning Program providers is not structured to meet the Agency Priorities listed above and would face barriers to providing the types of services required in the 2027 Notice of Funding Opportunity. The 2022 Title X Notice of Funding Opportunity prioritized and emphasized health equity, removal of access barriers, client-centered care, and expansion of service modalities, in line with 42 C.F.R. § 59.5(a)(3-4); 42 C.F.R. § 59.2; and 42 C.F.R. § 59.10(b). The Department applied to and was awarded funds under that NOFO. In contrast, the current 2027 NOFO stresses alignment with the Agency Priorities, such as the elimination of DEI-driven frameworks and activities, which are in direct conflict with Title X's regulations and New York State Family Planning Program policies. *See* 42 C.F.R. § 59.5. For example, Title X regulations require Title X grantees serve all patients in an inclusive, client-centered, culturally and linguistically appropriate, and nondiscriminatory manner. *See* 42 C.F.R. § 59.5. The 2027 NOFO eliminates these priorities that align with the Title X regulations, the Department of Health's mission, and with the existing providers' commitment to advancing health for all.

21. Further, the NOFO removes the requirement to follow nationally recognized standards of care identified in the QFP. Instead, the 2027 NOFO emphasizes approaches that appear to be contrary to those standards of care, including reducing "overmedicalization" and the use of nonmedical "restorative" approaches to reproductive health. This approach is out of alignment with

the New York State Family Planning Program requirement that all subrecipients follow nationally recognized standards of care and must implement services as outlined in the QFP.

22. New York's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the State would ordinarily expect to continue that programming, which has proven successful. To the extent the State must modify its existing program or application to address the new Agency Priorities, doing so would require additional, resource-intensive administrative review, coordination, planning, and potentially programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the State's ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in New York.

23. The 2027 NOFO is internally inconsistent and unclear, failing to provide applicants with adequate notice of the requirements they are expected to meet. For example, the 2027 NOFO places limited and disparaging emphasis on contraception, mentioning it only once and in a context that disfavors its provision. The NOFO requires applicants to demonstrate alignment with Agency Priorities including a focus on reducing "overmedicalization" in health care and pharmaceutical treatments. However, the provision of a broad range of contraceptive methods is a core component of the Title X program. The directives create substantial uncertainty for applicants seeking to understand how they can satisfy the agency priorities while complying with the statutory and regulatory requirements of Title X. These inconsistencies create uncertainty in how applicants should prepare and structure their application; whether the application should address the Agency Priorities in the NOFO or continue like in the past to address the longstanding regulatory requirements of Title X.

24. New York State law requires that "[e]very individual has the fundamental right to

choose or refuse contraception or sterilization." Public Health Law (PHL) § 2599-aa(l). It also requires that "[e]very individual who becomes pregnant has the fundamental right to choose to carry the pregnancy to term, to give birth to a child, or to have an abortion." PHL § 2599-aa(2). The Department of Health understands the phrase "every individual" to be inclusive of every individual, regardless of age, including minors. Therefore, the Department could not comply with the following 2027 NOFO priorities, among others: the "Overmedicalization Priority," which deemphasizes contraception; and the "Directive Counseling" priority, which the Department understands to require exclusive focus on parenthood.

25. The Agency Priorities also include the prioritization of chronic disease and root-cause health approaches, promotion of body literacy, fertility awareness, protection of parental rights, and compliance with immigration eligibility restrictions. Compliance with these priorities as the Department of Health understands them does not align with current New York State Family Planning Program or the Department's mission and values. The mission of the Department of Health is to protect and promote health and well-being for all. Ultimately, full compliance with these federal priorities is incompatible with the current New York State Family Planning Program and in conflict with the mission and vision of the New York State Department of Health.

Consequences of Losing Title X Funding

26. If New York does not receive Title X funding for the grant cycle beginning in 2027, New York would have to identify approximately $11,154,003 of alternate funding to support current activities. Without Title X funding, contractual and staff roles would be decimated. With no agency personnel left to manage contracts, monitor, collect, and analyze essential data, the Department would be unable to comply with federal reporting requirements or provide data used for other critical state functions.

27. Additionally, state funding would likely need to be considered in the context of New

York State's Fiscal Year 2027-28 budget process which requires negotiation with the New York State Legislature and could present timing challenges given New York State's FY 2027-28 appropriations will not be authorized until April 1, 2027 at the earliest.

28. Without sufficient replacement funding, New York could not fund its current Title X network in full. In New York, this would likely mean reduced services and/or loss of provider sites and health centers, loss of staff positions, and reduced access to care for individuals who currently receive Title X-funded services each year. Those who seek services in New York are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

29. The State would also face fiscal consequences from the loss of Title X-funded services. Many patients who can no longer obtain affordable family planning, sexually transmitted infection screening and treatment, and related preventative care through Title X-funded providers may have to forego these cost-effective early-stage interventions or seek replacement care from other sources such as federally qualified health centers, that often lack the full range of birth control methods offered by Title X providers. When preventive care is unavailable, patients often delay treatment until conditions become urgent. This will increase reliance on emergency departments and hospital systems. It will also increase demand for services supported by State and local resources, and could increase public expenditures for care that Title X-funded providers currently provide, or help avoid altogether through early screening, treatment, and preventative services. Some patients may be unable to obtain this critical heath care at all. This will lead to poor health outcomes and most costly health care needs for state residents in the immediate and long-term. New York is likely to bear these costs through its state Medicaid program.

30. Title X funding currently pays for subrecipient staffing, operating expenses (contraceptive methods, direct medical supplies, laboratory supplies and educational materials),

equipment, rent, utilities, subcontracts and staff travel throughout the State's provider network. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, reducing clinic hours, eliminating staff positions, limiting patient appointments and in some cases closing clinic sites and entire agencies altogether as well as disrupting longstanding community partnerships. For many patients, there is no alternative source of care. Family planning clinics are often the only accessible healthcare resource for low-income individuals, uninsured residents, young adults, and those living in rural or medically underserved communities. When these services are reduced, patients lose access to contraception, cancer screenings, STI testing and treatment, preventive care, and reproductive health services. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

31. For these reasons, the loss or substantial reduction of Title X funding would impose costs on New York beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems, and reduce access to care for residents throughout the State who rely on the State's Title X program and Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of October 2026, in Albany, New York.

Travis O'Donnell
/s/
Travis O'Donnell
Director of the Center for Community Health
Department of Health
Empire State Plaza, Corning Tower,
Albany, New York 12237