# EXHIBIT 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STATE OF NEW YORK, *et al.*, *

Plaintiffs, *

v. *

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, * Case No. 1:26-cv-03405-DLB

*

Defendants.

*

*

* * * * * * * * * * * *

**DECLARATION OF KRISTEN RODACK**

I, Kristen Rodack, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Executive Deputy Secretary for the Pennsylvania Department of Health (DOH), a position I have held since 2023 and I have served in DOH in other roles since 2019. As part of my duties, I oversee the management of DOH activities to ensure that their missions and goals are in alignment with the best interests of all people in Pennsylvania. This is accomplished by creating, developing, and directing policies in accordance with state and federal law and by supervising Deputy Secretaries and Office Directors who oversee and direct the DOH's operations.

3. My duties also include providing direction regarding funding of Department programs and managing the Department's budget. This includes identifying and directing funds provided by the federal government.

4. In this capacity, I am familiar with Pennsylvania's public health programs and the provision of family planning and related preventive health services in the States, including services

provided by entities that receive federal Title X funding.

5. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

Title X-Funded Family Planning Programming in Pennsylvania

6. Although Pennsylvania is not a direct recipient of Title X funding, federal Title X funding supports family planning and related preventive health services throughout Pennsylvania through the Commonwealth's four grantees. These grantees have provided Title X-funded services in Pennsylvania for over 50 years and are an established part of the State's broader public health infrastructure and key partners in the provision of Sexually Transmitted Infections (STI) counseling, testing, and treatment services statewide (including HIV counseling and testing).

7. Title X funded providers in Pennsylvania include, but are not limited to family planning clinics, federally qualified health centers, community-based organizations, and certain hospital-based reproductive health providers. Many of these providers are longstanding members of Pennsylvania's family planning and public health network, including the providers of STI services. The individuals served by Title X-funded providers in Pennsylvania include low income/uninsured/underinsured populations. In many Pennsylvania communities, Title X funded providers are an essential source of affordable family planning and preventive health services for individuals who otherwise have limited access to care. Title X funded providers are in communities throughout Pennsylvania including rural communities that have limited access to reproductive healthcare, including STI services.

8. The Title X funded network addresses significant public health needs within Pennsylvania. In Title X funded clinics, routine STI testing is a vital healthcare tool used to prevent severe reproductive health complications, including congenital syphilis in newborns and infertility

caused by gonorrhea and chlamydia. Because STIs are frequently asymptomatic, routine screening allows for early detection and treatment before irreversible damage occurs. Title X funded providers play an essential role in addressing these needs by providing, among other things, STI prevention, counseling, testing, and treatment. Title X providers partner with DOH to assure patients and partners receive science-based education, testing, and treatment in a respectful manner to prevent the spread of infections.

9. Pennsylvania relies on the existing capacity of Title X funded providers to help meet these public health needs. These providers have established services sites, trained personnel, referral networks, and community relationships through which they provide family planning and related preventive health services, including STI services.

Pennsylvania and the 2027 NOFO

10. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. I understand that the 2027 NOFO establishes new conditions and priorities that will govern Title X funding for the 2027 grant cycle and will affect Title X funded providers operating in Pennsylvania.

11. In particular, the 2027 NOFO requires applicants to align with new priorities advanced by the Office of Population Affairs, the Office of the Assistant Secretary of Health, and the U.S. Department of Health and Human Services. These priorities relate to, among other things, diversity, equity, and inclusion and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (the "Agency Priorities"). The 2027 NOFO incorporates these Agency Priorities into the application and review process and further requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

12. Title X funded providers in Pennsylvania may need to make significant changes to established programs or services to respond to the new Agency Priorities to remain competitive for Title X funding. Such changes will likely disrupt established services including STI services, impose substantial administrative and programmatic burdens on existing grantees, and reduce the capacity of the Title X funded network on which Pennsylvania and its residents rely. Providers that do not make such changes may face the loss of Title X funding.

13. DOH has longstanding relationships with Title X funded providers within Pennsylvania. These relationships have allowed Pennsylvania residents to rely on established network of providers, alleviating some of the burden Pennsylvania would otherwise face having to create or fund duplicative capacity to provide these services.

Consequences of Losing Title X Funding

14. Pennsylvania does not have sufficient alternative provider capacity to immediately replace the services, including STI counseling, testing, and treatment services (including HIV) supported by Title X funding. Without sufficient replacement funding, affected providers are likely to reduce services, reduce staffing and availability, or close service sites. Residents who currently obtain services through these providers would be likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

15. These consequences from the loss of Title X funded services would also impose fiscal consequences on Pennsylvania. Many patients who can no longer obtain affordable family planning, sexually transmitted infection screening and treatment, and related preventive care through Title X funded providers may have to forgo these cost-effective early-stage interventions or seek replacement care from other sources such as emergency rooms. This would increase demand for services supported by State and local resources and could increase public expenditures for care that Title X funded providers currently provide or help prevent through early screening, treatment, and

preventive services. Some patients may be unable to obtain this critical heath care at all. This will lead to poorer health outcomes and increased health care costs for state residents in the immediate and long-term. Pennsylvania is likely to bear these costs through state Medicaid programs.

16. Pennsylvania cannot immediately replace the infrastructure supported by Title X funding. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, longstanding community partnership, and the provision of accurate and compassionate STI counseling, testing, and treatment. Rebuilding that capacity, assuming alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

17. To prevent the harms caused by a loss of Title X funding, Pennsylvania would have to attempt to fill the shortfall with state-only funds.

18. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Pennsylvania beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems related to the provision of STI services, and reduce access to care for residents throughout Pennsylvania who rely on Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 29th day of September 2026, in Harrisburg, Pennsylvania.

/s/ Kristen Rodack
Kristen Rodack
Executive Deputy Secretary
Pennsylvania Department of Health