# EXHIBIT 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-03405-DLB |

**DECLARATION OF VANESSA WALKER HARRIS**

I, Vanessa Walker Harris, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Director of the Office of Family Health Services at the Virginia Department of Health ("VDH") within the Commonwealth of Virginia, a position I held from 2015-2020 and resumed in 2022. I have also previously served as Virginia's Secretary of Health and Human Resources.

3. My work in my current role includes program administration, budget management, policy development, people management, and strategic planning for programs spanning nutrition, chronic disease and injury prevention, maternal and child health promotion, and population health surveillance. In this capacity, I am familiar with the Commonwealth's administration, funding, and delivery of family planning and related preventative health services, including services supported through the federal Title X program.

4. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

Virginia's Uses of Title X Funding for Family Planning Programming

5. The Commonwealth of Virginia, through VDH, is a direct recipient of Title X funding. Virginia uses Title X funding to cover the costs of its family planning services. Title X

services include the delivery of related preventative health services, including contraception; cervical and breast cancer screening; sexually transmitted infection (STI) testing and treatment; and pregnancy diagnosis and counseling. The Commonwealth has participated in the Title X program continuously since 1970.

6. For the 2026 grant year (April 1, 2025-March 31, 2026), VDH's Title X program had a total annual budget of approximately $4,063,106.12, consisting of $3,258,656 in federal Title X funding and $804,450.12 in state funding. These funding sources collectively support the Commonwealth's family planning program and provider network. In Virginia, Title X funds primarily support personnel, pharmaceutical supplies, and other costs related to the provision of direct clinical services. Title X funds are allocated based on caseload and weighted according to quality measures and community need.

7. VDH administers Title X through twenty-five local health departments and five specific subrecipients: Arlington Health Department, Loudoun Health Department, Healthy Community Health Centers, Neighborhood Health, and Rockbridge Area Health Center. VDH's local health departments, including those in Arlington and Loudoun, are longstanding members of the Commonwealth's Title X network. VDH's three other subrecipients began providing Title X services in 2019.

8. As of August 2026, VDH's Title X network includes 108 health centers. During 2025, these providers served approximately 18,356 individuals through approximately 28,960 visits.

9. In 2025, approximately 60% of patients had household incomes at or below the Federal Poverty Level and accordingly received services at no cost. In addition, approximately 74% of patients were uninsured. In many Virginia communities, these providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care.

10. The Title X program addresses significant public health needs within Virginia. Access to contraception is a key intervention in public health to help reduce mistimed or unintended pregnancies and to treat other medical conditions. FDA-approved methods of contraception are

extremely effective at preventing pregnancies when used consistently and correctly. Benefits of access to contraception include improved health and well-being, reduced global maternal mortality, health benefits of pregnancy spacing, female engagement in the work force, and economic self-sufficiency for women. Providers funded by Title X play an essential role in addressing these needs by providing, among other things, a broad range of contraceptive methods regardless of a patient's ability to pay.

11. Whenever it has accepted and drawn down Title X funds, VDH has faithfully complied with applicable law and regulations. During its participation in the Title X program, VDH has followed applicable Office of Population Affairs ("OPA") guidance, including implementing recommendations from the 2014 and 2024 editions of OPA's own *Providing Quality Family Planning Services* ("QFP") publication, to the extent required by OPA in its 2014, 2022, and 2024 Title X Family Planning Guidelines, applicable Funding Opportunity Announcements, and in individual grant terms and conditions. VDH has invested time and effort to ensure it provides quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations: As applicable during its participation, it has worked hard to adapt its programming to implement past OPA feedback, used OPA-provided program review tools to assess its own compliance and that of subgrantees, and attended Reproductive Health National Training Center trainings and ongoing virtual and in-person trainings about emerging issues in the field of family planning.

Virginia's Title X Application and the 2027 NOFO

12. VDH is responsible for preparing and submitting Virginia's state public health Title X application. Preparing the application requires substantial work by state personnel and coordination with the Commonwealth's Title X subrecipients and other program partners.

13. Preparing our Title X application requires significant time and resources from VDH. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; developing budgets and performance measures; and completing internal review and approval processes. The application requires the Commonwealth to

make decisions about its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins.

14. Virginia has applied for Title X family planning services project grants since 1970 and has never been denied a grant award. As required by state law, Virginia must engage in a competitive bid process to identify its network of proposed subrecipients. Historically, Virginia has based its Title X application substantially on its existing program and provider network.

15. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. VDH has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the Commonwealth's existing Title X program.

16. In particular, VDH understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health ("OASH"), and the U.S. Department of Health and Human Services. The priorities concern, among other things, diversity, equity, and inclusion and health equity; gender identity; immigration; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

17. Applying for funding under the 2027 NOFO has required and will continue to require the Commonwealth to devote extra staff time and resources to determining if and how its existing program must be modified and to address the new Agency Priorities while continuing to comply with existing Title X requirements. Making changes to Virginia's established program in an attempt to further align with the new Agency Priorities may disrupt services, provider relationships, and many other aspects of the Commonwealth's existing Title X programming.

18. In addition, it has not been made clear to VDH what is required to comply with the new Agency Priorities. This creates a challenge for assembling Virginia's application. The difficulty in assembling an application is compounded by the fact that some priorities appear to be in tension,

if not conflict, with existing laws and regulations. For example, the new Agency Priorities include "Enforcing the Hyde Amendment," which OASH defines as prohibiting "the use of taxpayer funding to promote elective abortion, consistent with applicable law." The Hyde Amendment prohibits the use of federal funds for abortion services, but the Hyde Amendment does not prohibit federally funded agencies from discussing abortion with patients. Title X regulations require that clinics offer "neutral, factual information and nondirective counseling" on pregnancy options, including "[p]renatal care and delivery," "[i]nfant care, foster care, or adoption," and "[p]regnancy termination," as well as "referral upon request" (42 CFR 59.5).

19. Virginia's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the Commonwealth would ordinarily expect to continue that programming, which has proven successful. To the extent the Commonwealth must modify its existing program or application to address the new Agency Priorities, doing so would require additional, resource-intensive administrative review, coordination, planning, and potentially programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the Commonwealth's ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in Virginia.

<u>Consequences of Losing Title X Funding</u>

20. If Virginia does not receive Title X funding for the grant cycle beginning in 2027, VDH could not replace federal funding with state dollars or other funding sources in full. VDH would have to seek General Assembly approval for any replacement funding through state dollars. The Commonwealth would not be able to determine the availability of any such funds until the 2027 appropriations process concludes. Any state dollars appropriated as replacement funds would necessarily take away from other programs, policies, and priorities.

21. Without sufficient replacement funding, VDH could not fund its current Title X network in full. In Virginia, this would likely mean reduced services and/or loss of provider sites

and health centers, loss of staff positions, and reduced access to care for individuals who currently receive services funded by Title X each year. Those who seek services in Virginia are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

22. The Commonwealth would also face fiscal consequences from the loss of services funded by Title X. Many patients who can no longer obtain affordable family planning, sexually transmitted infection screening and treatment, and related preventative care through providers funded by Title X may have to forego these cost-effective early-stage interventions or seek replacement care from other sources such as state general funds allocated by the Virginia General Assembly. This would increase demand for services supported by state and local resources and could increase public expenditures for care that providers funded by Title X currently provide or help prevent through early screening, treatment, and preventative services. Some patients may be unable to obtain this critical heath care at all. This will lead to poor health outcomes and more costly health care needs for state residents in the immediate and long-term. Virginia is likely to bear these costs through its state Medicaid programs.

23. Title X funding currently pays for personnel, pharmaceutical supplies, and other costs related to the provision of direct clinical services throughout the Commonwealth's provider network. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, longstanding community partnership, and patient access to care. In much of the Commonwealth, Title X clinics are the only publicly funded family planning program, and without Title X funds, patients will no longer have access to these critical services. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

24. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Virginia beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems, and reduce

access to care for residents throughout the Commonwealth who rely on the Commonwealth's Title X program and services funded by Title X.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of October 2026, in Richmond, Virginia.

V Walker Harris
box SIGN 4W6257WP-4QPRX9WX

Vanessa Walker Harris
Director of the Office of Family Health Services
Virginia Department of Health
109 Governor Street, 10th Floor
Richmond, VA 23219