# EXHIBIT 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | * | Case No. 1:26-cv-03405-DLB |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * *

**DECLARATION OF**
**CINDIL REDICK-PONTE, MSSW**

I, Cindil Redick-Ponte, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the Community Healthcare Improvement and Linkages Section Manager, Office of Family and Community Health Improvement, Division of Prevention and Community Health at the Department of Health within the State of Washington, a position I have held since 2024. My work includes oversight, vision, management, assurance of adherence to state law, and direction of the programs within the Community Healthcare Improvement and Linkages section of the office, which includes the sexual and reproductive health and perinatal programs. In this capacity, I am familiar with the State's administration, funding, and delivery of family planning and related preventative health services, including services supported through the federal Title X program.

3. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If

called as a witness, I could and would testify competently to the matters set forth below.

Washington's Title X-Funded Family Planning Programming

4. The State of Washington, through the Department of Health (DOH) is a direct recipient of Title X funding. Washington uses Title X funding to cover the costs of its Sexual and Reproductive Health Program (DOH-SRHP), which works with local, state, and national partners to improve access to quality and comprehensive sexual and reproductive health information and services. The State has participated in the Title X program since 1980.

5. For Fiscal Year 2026, DOH-SRHP had a total annual budget of approximately $17,000,000.00, consisting of $4,297,649.00 in federal Title X funding and $13,294,582.98 in State GFS (cost share). These funding sources collectively support the State's family planning program and provider network. DOH-SRHP has integrated its Title X funds with other funding sources to maximize efficiency and enhance its ability to provide comprehensive family planning services to those most in need. These funds are combined and disbursed via braided contracts to support 12 subrecipients, across 92 clinical sites. The clinics funded through the family planning program include critical safety net providers for Washington State: federally qualified health centers (FQHCs), community health centers, local health jurisdictions, and nonprofit clinics. The FY2026 budget is representative of the State's typical annual funding for family planning and related preventative health services.

6. Washington administers Title X through 12 subrecipient organizations, including local health jurisdictions, Planned Parenthood affiliates, and FQHCs. Many of these providers are longstanding members of Washington's Title X network.

7. Washington's Title X network includes 92 health centers across 32 counties in Washington State. During 2025, these providers served approximately 76,156 individuals through approximately 102,281 visits.

8. In 2025, approximately 47.4% of individuals received services at no cost, approximately 17% who received services were uninsured, and 41% had public insurance. Approximately 72% of individuals who received services had household incomes at or below 250% of the federal poverty level. In many Washington communities, these providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care.

9. The Title X program addresses significant public health needs within Washington. Recently, DOH has been monitoring and tracking increased rates of sexually transmitted infections (STI), such as syphilis, including congenital syphilis, which occurs when syphilis passes to babies during pregnancy. Rates of syphilis have increased in the past 10 years, and the state is now experiencing a sharp increase in statewide congenital syphilis cases across both rural and urban counties. Title X-funded providers play an essential role in addressing these outbreaks by providing, among other things, timely STI testing and treatment and wellness exams. Additional services provided by the Title X network related to public health priorities include reproductive cancer screenings and referrals, contraceptive care, and referrals to behavioral health supports.

10. Whenever it has accepted and drawn down Title X funds, DOH has faithfully complied with applicable law and regulations. During its participation in the Title X program, DOH-SRHP has followed applicable Office of Population Affairs ("OPA") guidance, including implementing recommendations from OPA's *Providing Quality Family Planning Services* ("QFP") publication. DOH-SRHP has invested significant time and effort to ensure its subrecipients provide quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations. It has also worked hard to adapt its programming to implement past OPA feedback, used OPA-provided program review tools to assess its own compliance and that of subgrantees, attended Reproductive Health National

Training Center trainings, and actively participated in training and technical assistance opportunities provided by the National Family Planning and Reproductive Health Association and the State Family Planning Association.

<u>Washington's Title X Application and the 2027 NOFO</u>

11. DOH-SRHP is responsible for preparing and submitting Washington's Title X application. Preparing the application requires substantial work by State personnel and coordination with the State's Title X subrecipients and other program partners.

12. Preparing our Title X application takes Washington significant time and resources. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; performing a comprehensive statewide needs assessment; developing budgets and performance measures; and completing internal review and approval processes. The application requires the State to make decisions about its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins.

13. Washington has applied for Title X family planning services project grants in most years since 1978 and has never been denied a grant award. Historically, Washington has based its Title X application substantially on its existing program and provider network.

14. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. DOH has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the State's existing Title X program.

15. In particular, DOH understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health, and the U.S. Department of Health and Human Services (HHS). The priorities concern, among other things,

diversity, equity, and inclusion and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

16. Applying for funding under the 2027 NOFO has required and will continue to require the State to devote extra staff time and resources to determining if and how its existing program must be modified and to address the new Agency Priorities while continuing to comply with existing Title X requirements. Washington is faced with a difficult choice: on the one hand, it can apply under the 2027 NOFO with its existing Title X program, which it knows to be efficacious, and risk losing funding in the event the Office of Population Affairs decides that program does not sufficiently align with the new Agency Priorities; or, on the other hand, it can make changes to its established program in an attempt to further align with the new Agency Priorities, despite the vagueness of new conditions, and even though doing so may disrupt services, provider relationships, and many other aspects of the State's existing Title X programming.

17. In addition, it has not been made clear to DOH what is required to comply with the new Agency Priorities. This creates a challenge for assembling Washington's application. The difficulty in assembling an application is compounded by the fact that some priorities appear to be in tension, if not conflict, with existing laws and regulations.

18. Washington's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the State would ordinarily expect to continue that programming, which has proven successful. To the extent the State must modify its existing program or application to address the new Agency Priorities, doing so would require additional, resource-intensive administrative review, coordination, planning, and potentially

programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the State's ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in Washington.

19. DOH-SRHP has already received questions from our subrecipients about the new Title X requirements listed in the NOFO. Several subrecipients have expressed concern over how they can continue to participate in the Title X program and remain in compliance with Washington's laws around minor consent for healthcare services and comprehensive reproductive healthcare. Specific conflicts identified by subrecipients include minor consent for provision of the following services: STI testing, STI treatment, contraception counseling and contraception prescriptions as well as the "strict separation" of Title X from abortion services, which may require physical separation of abortion and Title X services.

20. Washington State's Reproductive Privacy Act states that "…the state shall not deny or interfere with a pregnant individual's fundamental right to choose or refuse to have an abortion." The revised 2027 NOFO places an emphasis on the "strict separation" of Title X and abortion services, and it is unclear whether this refers to the current Hyde Amendment interpretation in Title X regulation or if a new rule reinstating the 2019 "gag rule" and physical separation of services will be forthcoming. The lack of clarity in this NOFO, combined with HHS' stated priority that Title X resources are not to "promote or support elective abortion," means that there may be a direct conflict with state healthcare privacy laws which would require DOH-SRHP to exit the program, significantly impacting Washington's healthcare safety net and eliminating critical care for over 76,000 Washingtonians.

21. Washington DOH's vision is "Equity and optimal health for all," and the agency's public health priorities include health justice, equity, affordability, and accessibility. A central

component of these priorities is reproductive autonomy and making sure we equip individuals to decide about if and when they want to become pregnant. The revised 2027 NOFO outlines federal priorities that directly conflict with the state's public health mission and priorities. Key conflicts include the updated reproductive goals counseling requirement, the new focus on the overmedicalization of family planning, and the changes to immigrant eligibility. When combined, these tensions create a complicated situation for DOH-SRHP and make it difficult to determine the best path forward for the state.

Consequences of Losing Title X Funding

22. If Washington does not receive Title X funding for the grant cycle beginning in 2027, it is unclear how much of the approximately $4.2 million in federal funding could be funded using State dollars or other funding sources. Further, any replacement funding would first require considerable coordination with agency and state leadership to determine how this gap could be filled with either new or existing resources. The State also would not be able to determine the availability of any such funds until the State's budget is released during its legislative session in spring 2027, presenting challenges such as delays in contract payment, pausing of critical health services, and staff furloughs or layoffs.

23. Without sufficient replacement funding, Washington could not fund its current Title X network in full. In Washington, this would likely mean reduced services and/or loss of provider sites and health centers, loss of staff positions, and reduced access to care for individuals who currently receive Title X-funded services each year. Those who seek services in Washington are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

24. The State would also face fiscal consequences from the loss of Title X-funded services. Many patients who can no longer obtain affordable family planning, sexually transmitted

infection screening and treatment, and related preventative care through Title X-funded providers may have to forego these cost-effective early-stage interventions or seek replacement care from other sources such as state-funded medical assistance programs, the Breast, Cervical and Colon Health program, Alien Emergency Medical Medicaid programs, emergency room services, and nonprofit clinics with sliding scale fee models. This would increase demand for services supported by State and local resources and could increase public expenditures for care that Title X-funded providers currently provide or help prevent through early screening, treatment, and preventative services. Some patients may be unable to obtain this critical heath care at all. This will lead to poor health outcomes and more costly health care needs for state residents in the immediate and long-term. Washington is likely to bear these increased costs through their state medical assistance programs.

25. Title X funding currently pays for direct client clinical services, staffing, network coordination, training, and program monitoring throughout the State's provider network. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, longstanding community partnership, and possible clinic closures. Counties that are medically underserved would feel the impact the most. Less federal funding would also mean fewer staff to manage grants, contracts, and federal reporting, which would weaken the program's ability to support its network of subrecipients. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

26. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Washington beyond the loss of the federal grant itself. It would disrupt an established network of providers and services, increase demands on other publicly funded health systems, and reduce access to care for residents throughout the State who rely on the State's Title X program and Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 30th day of September 2026, in Shoreline, Washington.

/s/ Cindil Redick-Ponte

CINDIL REDICK-PONTE,
MSSW
Community Healthcare Improvement and Linkages
Section Manager
Washington State Department of Health
111 Israel Rd SE, Tumwater, WA 98501