# EXHIBIT 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | * | Case No. 1:26-cv-03405-DLB |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * *

**DECLARATION OF PAULA TRAN**

I, Paula Tran, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the State Health Officer and Administrator at the Wisconsin Department of Health Services (WI-DHS), Division of Public Health (DPH) within the State of Wisconsin, a position I have held since 2021. My work includes administrating and overseeing the WI-DHS' DPH. In this capacity, I am familiar with the State's administration, funding, and delivery of family planning and related preventative health services, including services supported through the federal Title X program.

3. I have personal knowledge of all the facts stated herein, including based on my professional experience and information and records available to me in my professional capacity. If called as a witness, I could and would testify competently to the matters set forth below.

Wisconsin's Title X-Funded Family Planning Programming

4. The State of Wisconsin, through WI-DHS, is a direct recipient of Title X funding.

Wisconsin uses Title X funding to cover the costs of its Reproductive Health and Family Planning (RHFP) program, which supports a network of clinics across the State that provide client-centered quality RHFP services. The RHFP program coordinates care and focuses on comprehensive services by bringing together a variety of providers and referral partners, and providing standard information, training, and resources to all partners. The State has participated in the Title X program continuously since 2018.

5. For Fiscal Year 2026, the RHFP program had a total annual budget of approximately $5,284,015, consisting of $2,864,620 in federal Title X funding, $1,833,800 in State funding, $308,037 in federal Title V funding, and $138,779 from the federal Medical Assistance Program. These funding sources collectively support the State's family planning program and provider network. In Wisconsin, funding is allocated out by a funding formula that incorporates multiple factors depending on the funding source. The FY2026 budget is representative of the State's typical annual funding for family planning and related preventative health services.

6. Wisconsin administers Title X through 15 subrecipients, including 14 local public health departments that provide direct client services, and one local public health department that provides direct client services and subcontracts with three non-profit organizations. Many of these providers are longstanding members of the State's Title X network.

7. As of September 2026, Wisconsin's Title X network includes 32 health centers. During 2025, these providers served approximately 7,390 individuals through approximately 15,234 visits.

8. In 2025, approximately 32% of individuals received services at no cost, approximately 27% who received services were uninsured and 60% had public insurance, approximately 79% had household incomes at or below 250% of the federal poverty level (FPL), and approximately 46% had household incomes at or below 100% of the FPL. In many Wisconsin

communities, these providers are an essential source of affordable family planning and preventative health services for individuals who otherwise have limited access to care.

9. The Title X program addresses significant public health needs within Wisconsin. In Wisconsin, an estimated 358,860 women in need live within a contraceptive access gap, and 54,840 reside in counties without a publicly funded clinic offering even a single contraceptive service. Many of the counties with the largest access gaps are classified as rural by the Federal Office of Rural Health Policy. All counties in Wisconsin are designated as a contraceptive access gap, meaning there is misalignment between a woman's self-defined need and clinic-based service availability. All Wisconsin counties are designated as having a contraceptive access gap, indicating a mismatch between women's self-identified needs and the availability of clinic-based services. Additionally, 27 counties lack any publicly funded clinic providing contraceptive care, and 40 counties have no clinic offering the full range of contraceptive methods. Title X-funded providers play an essential role in addressing these needs by providing, among other things, contraceptive and family planning access to 28 rural counties.

10. Whenever it has accepted and drawn down Title X funds, WI-DHS has faithfully complied with applicable law and regulations. During its participation in the Title X program, WI-DHS has followed applicable Office of Population Affairs ("OPA") guidance, including implementing recommendations from the 2014 and, if applicable, 2024 editions of OPA's own *Providing Quality Family Planning Services* ("QFP") publication, to the extent required by OPA in its 2014 Title X Family Planning Guidelines, and applicable Funding Opportunity Announcements. WI-DHS has invested time and effort to ensure it provides quality family planning services consistent with nationally recognized standards of care in compliance with applicable program requirements and recommendations: As applicable during its participation, it has worked hard to adapt its programming to implement past OPA feedback, used OPA-provided program review tools to assess

its own compliance and that of subgrantees, attended Reproductive Health National Training Center trainings, revised the RHFP program site evaluation process, and created specific policy and procedure templates to comply with Title X expectations.

Wisconsin's Title X Application and the 2027 NOFO

11. WI-DHS is responsible for preparing and submitting Wisconsin's Title X application. Preparing the application requires substantial work by State personnel and coordination with the State's Title X subrecipients and other program partners.

12. Preparing our Title X application takes WI-DHS significant time and resources. The process includes developing a Project Narrative, Work Plan, and Budget Narrative; coordinating with subrecipients; collecting program data; developing budgets and performance measures; and completing internal review and approval processes. The application requires the State to make decisions about its program, likely provider network, staffing, services, and budget before an application can be submitted, and well before any grant period begins.

13. Wisconsin has applied for Title X family planning services project grants since 2018 and has never been denied a grant award. As required by state law, Wisconsin must engage in a competitive bid process to identify its network of proposed subrecipients before allocating funding to providers. Wisconsin has based its Title X application substantially on its existing program and provider network.

14. The Office of Population Affairs issued the 2027 Title X Notice of Funding Opportunity ("2027 NOFO") on July 9, 2026. WI-DHS has reviewed the 2027 NOFO and determined that its new conditions and priorities significantly change what is expected of Title X applicants and present significant challenges for the State's existing Title X program.

15. In particular, WI-DHS understands that the 2027 NOFO requires alignment with new priorities advanced by OPA, the Office of the Assistant Secretary for Health, and the U.S.

Department of Health and Human Services. The priorities concern, among other things, diversity, equity, and inclusion and health equity; gender identity; hormonal contraception and "overmedicalization"; abortion and the Hyde Amendment; and reproductive goal counseling, including concerning marriage and parenthood (together, the "Agency Priorities"). The 2027 NOFO incorporates these priorities into the application and review process and requires successful applicants to demonstrate ongoing alignment with them during the life of the grant (60 months).

16. Applying for funding under the 2027 NOFO has required and will continue to require the State to devote extra staff time and resources to determining if and how its existing program must be modified and to address the new Agency Priorities while continuing to comply with existing Title X requirements. Wisconsin is faced with a difficult choice: on the one hand, it can apply under the 2027 NOFO with its existing Title X program, which it knows to be efficacious, and risk losing funding in the event the Office of Population Affairs decides that program does not sufficiently align with the new Agency Priorities; or, on the other hand, it can make changes to its established program in an attempt to further align with the new Agency Priorities, despite the vagueness of new conditions, and even though doing so may disrupt services, provider relationships, and many other aspects of the State's existing Title X programming.

17. In addition, it has not been made clear to WI-DHS what is required to comply with the new Agency Priorities. This creates a challenge for assembling Wisconsin's application. The difficulty in assembling an application is compounded by the fact that some priorities appear to be in tension, if not conflict, with existing laws and regulations.

18. Wisconsin's existing Title X program is the product of many years of planning, investment, and coordination with its provider network, and the State would ordinarily expect to continue that programming, which has proven successful. To the extent the State must modify its existing program or application to address the new Agency Priorities, doing so would require

additional, resource-intensive administrative review, coordination, planning, and potentially programmatic changes. If programmatic changes are required, such changes are likely to disrupt established services and provider relationships, impose substantial administrative burdens, and reduce the State's ability to maintain effective Title X programming and thus to provide family planning services and related treatment and preventative health care in Wisconsin.

19. The Agency Priorities directly conflict with the State's laws requiring comprehensive reproductive health care, including the following: Wis. Stat. § 253.07(1)(b) - Family planning services - counseling by trained personnel regarding family planning; distribution of information relating to family planning; and referral to licensed nurse practitioners within the scope of their practice, licensed physicians or local health departments for consultation, examination, medical treatment and prescriptions for the purpose of family planning; Wis. Stat. § 253.07(4) - Family planning and preventive health services - Screening for cervical cancer and breast cancer; Screening for high blood pressure, anemia, and diabetes; Screening for sexually transmitted diseases and HIV or AIDS; Infertility services; Health education; Pregnancy testing; Contraceptive services; Pelvic exams; Referrals for other health and social services; and Wis. Admin. Code § DHS 105.36(7)(b) - Family planning clinic medical services that shall be made available - Complete medical and obstetrical history; Physical examination; Laboratory evaluation; Prescription of the family planning method selected by the patient unless medically contraindicated; Instructions on the use of the chosen method, provision of supplies and schedule for revisits; and Referral to inpatient service when necessary to treat complications of contraceptive services provided by the clinic.

20. The Agency Priorities directly conflict with the State's essential services and priorities, including; linking individuals to needed personal health services (Wis. Stat. § 250.03(1)(L)7.) – The RHFP program following the Agency Priorities, the Title X network would not be able to adequately refer individuals for specific personal health needs, including gender

identity needs; informing and educating individuals about health issues (Wis. Stat. § 250.03(1)(L)3.) – The RHFP program strives to provide evidence-based education and counseling to all clients. Incorporating the Agency Priorities will warp the education and counseling provided to comply with ideology rather than facts; developing policies, plans, and programs that support individual and community health efforts (Wis. Stat. § 250.03(1)(L)5.) – the RHFP program would have to revise the program to fit the priorities and not fit the needs of individuals or communities.

<u>Consequences of Losing Title X Funding</u>

21. If Wisconsin does not receive Title X funding for the grant cycle beginning in 2027, Wisconsin could not replace that approximately $2,864,620 federal funding with State dollars or other funding sources, and any replacement funding would first require extensive resources, research, and time to determine eligibility and availability of additional funding sources. The State also would not be able to determine the availability of any such funds until further steps are implemented, presenting challenges such as changes to the provider network, service availability, and the Title X program services as a whole.

22. Without sufficient replacement funding, Wisconsin could not fund its current Title X network in full. In Wisconsin, this would likely mean reduced services and/or loss of provider sites and health centers, loss of staff positions, and reduced access to care for individuals who currently receive Title X-funded services each year. Those who seek services in Wisconsin are likely to face longer wait times, fewer available appointments, reduced services, and/or the need to travel farther for care.

23. The State would also face fiscal consequences from the loss of Title X-funded services. Many patients who can no longer obtain affordable family planning, sexually transmitted infection screening and treatment, and related preventative care through Title X-funded providers may have to forego these cost-effective early-stage interventions or seek replacement care from other

sources such as federally qualified health centers, free and charitable clinics, primary care providers, urgent care clinics, and emergency room departments. This would increase demand for services supported by State and local resources and could increase public expenditures for care that Title X-funded providers currently provide or help prevent through early screening, treatment, and preventative services. Some patients may be unable to obtain this critical heath care at all. This will lead to poor health outcomes and most costly health care needs for the State's residents in the immediate and long-term. Wisconsin is likely to bear these costs through their state Medicaid programs.

24. Title X funding currently pays for staffing, office supplies, clinical supplies, and rent throughout the State's provider network. A loss of Title X funding could result in the disruption of its family planning provider network, including the loss of provider capacity, longstanding community partnership, and distrust of the RHFP program and provider network. Rebuilding that capacity, even if alternative funding later becomes available, would require substantial time and public resources and would likely leave gaps in access to care in the interim.

25. Wisconsin also provides approximately $1,833,800 in State funding to 27 grantees to provide family planning and related reproductive health services. This investment supports the provision of family planning services, which includes counseling by trained personnel regarding family planning; distribution of information relating to family planning; and referral to licensed nurse practitioners within the scope of their practice, licensed physicians or local health departments for consultation, examination, medical treatment and prescriptions for the purpose of family planning. To prevent the harms caused by the loss of Title X funding, Wisconsin would need additional state funding to attempt to fill the shortfall with state-only funds.

26. For these reasons, the loss or substantial reduction of Title X funding would impose costs on Wisconsin beyond the loss of the federal grant itself. It would disrupt an established network

of providers and services, increase demands on other publicly funded health systems, and reduce access to care for residents throughout the State who rely on the State's Title X program and Title X-funded services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 29 day of September 2026, in Madison Wisconsin.

Paula Tran
State Health Officer and
Administrator
Division of Public Health
Wisconsin Department of Health Services
201 E Washington Ave, Madison, WI 53703